**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MELISSA CLEMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| NEW CASTLE COUNTY; | ) |
| NEW CASTLE COUNTY POLICE | ) |
| DEPARTMENT; MATTHEW MEYER, | ) |
| New Castle County Executive; | ) |
| VAUGHN M. BOND, JR., Chief of | ) |
| New Castle County Police; | ) |
| VANESSA S. PHILLIPS, | ) |
| Chief Human Resources Officer, and | ) |
| Lieutenant Colonel Quinton Watson, | ) |
| in their official and individual capacities, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

**INTRODUCTION**

1. Plaintiff, Melissa Clemons ("Plaintiff" or "Corporal Clemons"), files this action against Defendants New Castle County, (Defendant NCC" or "NCC"); the New Castle County Police Department ("Defendant NCCPD" or "NCCPD"); Matthew Meyer, New Castle County Executive; Colonel Vaughn M. Bond, Jr., Chief of the New Castle County Police Department; Vanessa S. Phillips, Chief Administrative Officer, and Lt. Col. Quinton Watson for back pay, front pay, compensatory damages, punitive damages and attorneys' fees for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k), Delaware Discrimination in Employment Act 19 *Del. C*. § 710, *et seq*., the Delaware

Persons with Disabilities Employment Protections Act, 19 Del. C. § 720, *et seq.,* breach of contract and breach of the covenant of good faith and fair dealing.

## NATURE OF THE ACTION

2. Defendant NCCPD employed Plaintiff for nearly 13 years.

3. Defendants engaged in disability discrimination and wrongfully discriminated against Plaintiff by virtue of her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq* and the Delaware Persons with Disabilities Employment Protections Act, 19 Del. C. § 720, *et seq*.

4. Defendants engaged in sex discrimination and wrongfully discriminated against Plaintiff by virtue of her pregnancy, in violation of the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k) and the Delaware Discrimination and Employment Act 19 Del. C. § 710, *et seq*. ("DDEA").

5. Defendants breached the implied covenant of good faith and fair dealing which, under Delaware law, inheres in every contract.

6. Defendants breached their contractual duty to Plaintiff by failing to continue Plaintiff's pay until she was able to return to work.

## JURISDICTION

7. This Court has federal question jurisdiction over this cause of action pursuant to 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

9. Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

**PARTIES**

10. Plaintiff is a resident of Middletown, Delaware, who at all times relevant to this Complaint was an employee of Defendant NCCPD.

11. Defendant New Castle County ("Defendant NCC") is located at the New Castle County Government Center, 87 Read's Way, New Castle, Delaware, 19720, and is subject to service of process at that same address.

12. Defendant New Castle County Police Department ("Defendant NCCPD") is located at the Public Safety Building, 3601 North DuPont Highway, New Castle, Delaware, 19720, and is subject to service of process at that same address.

13. Defendant Matthew Meyer, the County Executive for New Castle County, is being sued in his official and individual capacity and is subject to service of process at 87 Reads Way, New Castle, Delaware, 19720.

14. Defendant Vaughn M. Bond, Jr., the Chief of Police for the New Castle County Police Department, is being sued in his official and individual capacity and is subject to service of process at the Public Safety Building, 3601 North DuPont Highway, New Castle, Delaware, 19720.

15. Defendant Vanessa S. Phillips, the former Chief Human Resources Officer for the New Castle County Police Department at all times relevant to the Complaint and is now the Chief Administrative Officer ("CAO"), she is being sued in her official and individual capacity and is subject to service of process at the New Castle County Government Center, 87 Read's Way, New Castle, Delaware, 19720.

16. Defendant Quinton Watson, a Lieutenant Colonel with the New Castle County Police Department, is being sued in his official and individual capacity and is subject to service of

process at the Public Safety Building, 3601 North DuPont Highway, New Castle, Delaware, 19720.

## ADMINISTRATIVE PROCESS

17. On November 30, 2016, Plaintiff filed a timely Charge of Discrimination with the Delaware Department of Labor ("DDOL") alleging sex, disability and pregnancy discrimination and retaliation against Defendants New Castle County and New Castle County Police Department.

18. On May 3, 2018, Plaintiff received a "Final Determination and Right to Sue Notice" from the DDOL, which included a No Cause determination regarding Plaintiff's discrimination charge, hereto attached as *Exhibit A*.

19. On July 11, 2018, the Equal Employment Opportunity Commission ("EEOC") terminated its review of Plaintiff's charge as more than 180 days had passed since its filing and issued Plaintiff a notice of dismissal and Right to Sue, attached hereto as *Exhibit B*.

20. Plaintiff has filed this action under the ADA, DDEA and the Pregnancy Discrimination Act within ninety (90) days after receipt of her Right to Sue Notice from the DDOL.

21. Plaintiff has satisfied all statutory prerequisites for filing this action.

## FACTS

22. Prior to Plaintiff's wrongful termination, she was employed with Defendant NCCPD since July 6, 2004, most recently as a Corporal.

23. While Plaintiff was employed as a Police Officer with Defendant NCCPD, she injured her left hand during a training course on September 23, 2015.

24. Thereafter, NCC required Corporal Clemons to see Dr. Sowa as a result of her on the job injury.

25. From the outset, NCC failed to engage in the interactive process with Plaintiff which is mandated by the Americans with Disabilities Act.

26. Plaintiff was treating with Dr. Sowa without incident or question until June 15, 2016, after she disclosed to her Supervisor at NCCPD she was pregnant.

27. After her first evaluation with Dr. Sowa on September 24, 2015, Dr. Sowa kept Plaintiff out of work due to her pain levels and immobility.

28. While on leave, Plaintiff found out she was pregnant and promptly informed her Patrol Supervisor Lt. Feldman via email on May 17, 2016, to advise him of her condition.

29. Once Plaintiff advised her Supervisor about her pregnancy, everything began to change.

30. On June 15, 2016, during an examination, Plaintiff explained to Dr. Sowa that her pain was escalating up her arm. At which time, Dr. Sowa stated her condition of CRPS was out of his realm of expertise, therefore there was nothing more he could do for her so he referred her to Johns Hopkins.

31. The only restriction he gave her was no use of her left hand and stated other restrictions had to come from other physicians or specialists, he did not release her to work.

32. Despite these facts, it was somehow concluded Corporal Clemons was capable of returning to work to perform an 11-hour shift even though she had no movement in her left arm and had a high-risk pregnancy.

33. Knowing she could not return to work and because Dr. Sowa stated she needed to see other physicians Plaintiff went to be evaluated by her primary care physician.

34. Her primary care physician stated she be kept out of work until she could be evaluated further.

35. Therefore, upon the recommendation of Dr. Sowa, Plaintiff was seen by Dr. Mayer, at John Hopkins. Dr. Mayer is specifically trained to evaluate employees for return to work and disability assessments.

36. Dr. Mayer placed Plaintiff off work after this evaluation.

37. Despite the fact that both Plaintiff's primary care physician and Dr. Mayer stated she was not able to return to work, NCCPD relied solely on Dr. Sowa's opinion in deciding she was able to return to work.

38. Thereafter, Assistant County Attorney, Stephanie Tickle wrote to Plaintiff on June 1, 2016, demanding she return to work and if she did not, appropriate action would be taken against her.

39. Corporal Clemons was unable to return to work because NCCPD had stopped her physical and occupational therapy once they discovered she was pregnant despite the fact that she was told by all of her doctors that physical therapy must be continued to prevent her condition from worsening.

40. Other non-pregnant officers were given many years to remain on leave for recovery and were not terminated.

41. On August 8, 2016, Dr. Mayer provided Plaintiff with a disability note, requesting an urgent need for physical therapy, and a procedure involving Botox. Plaintiff immediately informed NCCPD of Dr. Mayer's evaluation and provided them with a note from her OBGYN in order to get the Botox procedure done. NCCPD did not respond to any of Plaintiff's doctor's notes.

42. From July to September 2016, Plaintiff's condition worsened and continued to move up her arm as a result of not being able to receive physical therapy.

43. Therefore, Plaintiff was forced to see yet another doctor in hopes of stopping her condition from worsening while pregnant.

44. Plaintiff was seen by Dr. Sokoloff on August 23, 2016, and September 19, 2016. He provided her with a disability note, physical therapy prescription, and a brace for her elbow. All of this information was provided to NCCPD; however, they ignored this information, continued to rely solely on Dr. Sowa's opinion, and therefore continued to refuse to pay for her work-related injury. Plaintiff was not able to receive the treatment essential to her recovery, due to NCCPD cutting off all payment.

45. Desperate, Plaintiff sought any and all treatments that were available to her while she was pregnant. Plaintiff sought treatment from Vanessa Vigilante, a pain management psychologist, beginning in August of 2016. She was required to use her private insurance for this since NCCPD refused to pay for it.

46. Additionally, Plaintiff had two nerve blocks on her own after NCC terminated physical therapy. She was also seeking other forms of treatment, including braces and speech therapy, on her own.

47. Plaintiff, as a member of the New Castle County Police Department, was entitled to the protections provided by the Collective Bargaining Agreement between New Castle County and the Fraternal Order of Police, Lodge No. 5.

48. Plaintiff is a third-party beneficiary of the contract between New Castle County and the Fraternal Order of Police, and as such, has standing to bring suit to enforce the protections of the Collective Bargaining Agreement.

49. Section 58(f) of the Collective Bargaining Agreement provides, "A permanent probationary or limited-term employee who is temporarily disabled in the line of duty shall receive full pay for the period of his/her disability without charge against his/her vacation or sick leave."

50. On October 13, 2016, NCC advised Plaintiff they attempted to place her into another position, and since she remained unable to perform any and all work, she would be separated since placement in another position could not be accomplished.

51. Thereafter, Plaintiff took leave under the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act, for the birth of her child.

52. During her leave, Plaintiff continued to explore treatment for her disability and was able to receive some treatment. Plaintiff was not able to receive the full range of treatment recommended by her doctors because she was still breast feeding at this time. The treatment she was able to undergo was not enough to clear Plaintiff to return to work.

53. Plaintiff's last request for additional leave was on January 13, 2017. She requested this leave because she had not been cleared by her doctors to return to work.

54. On January 24, 2017, NCCPD denied the request because of an undue hardship and on February 2, 2017 notified her of her termination.

55. Defendant Watson was made "Risk Manager" for NCCPD after the civilian in the position retired. He had no previous training in Risk Management.

56. In the summer of 2016, the former Risk Manager for NCC, Cheryl McDonough had a conversation with another female officer that was out on leave and advised her that Defendant Watson came into her office with a "hit list" of people he wanted terminated.

57. Defendant Watson requested to see medical records and was denied by Ms. McDonough. Upon information and belief, he accessed the medical records anyway.

58. Upon information and belief Plaintiff was on the "hit list" along with other female officers.

59. During Plaintiff's Step 1 Grievance hearing, Defendant Watson explained that he had a list of officers out on leave due to injury that he presented to then-Colonel Setting.

60. Defendant Watson said that after the officer is out on leave for a year due to injury, the officer's employment status is brought up for discussion. However, the timeline he presented during the hearing indicated Plaintiff's employment status with NCC was discussed well prior to the one-year mark.

61. Plaintiff's leave status was treated differently than other officers because of her pregnancy.

62. Plaintiff was terminated because of her disability and Defendants' failure to provide Plaintiff with a requested accommodation of extended leave which has routinely been provided to others.

63. Plaintiff's situation was unique and she provided a valid reason for her continued request an accommodation while she was obtaining the necessary treatment which had been delayed as a direct result of Defendants' actions.

64. Defendants failed to provide a non-discriminatory reason as to why granting Ms. Clemons accommodation request would pose an undue hardship on the organization.

65. Plaintiff has suffered physical, and economic damage as a result of the aforementioned conduct which exposes Defendants to liability under the ADA and Title VII.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

## COUNT I
### Discrimination in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*. & the Delaware Persons with Disabilities Employment Protections Act, 19 *Del. C.* § 720 *et. seq.*

66. The allegations of Paragraphs 1 through 65 are incorporated by reference as if fully restated herein.

67. Defendant NCCPD employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 12111(3).

68. At all times relevant hereto, Plaintiff was employed by Defendant NCCPD and is an "Employee" as defined by 42 U.S.C. § 12111(4).

69. Plaintiff received a Right to Sue letter from the EEOC on July 11, 2018. Plaintiff has satisfied all statutory prerequisites for filing this action.

70. NCCPD was required to determine Plaintiff's rights when she requested time off for her recommended treatment and to tend to her disability.

71. They were further required to initiate an informal, interactive process with her "[to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

72. But instead of working with her, they punished her for her disability. Complex Regional Pain Syndrome kept Plaintiff from lifting, sleeping, walking, caring for herself and for her child.

73. Plaintiff was disabled as defined under the ADA.

74. Plaintiff is a "qualified individual" who could perform the essential functions of a police officer in New Castle County, provided she was given the reasonable accommodation she sought, namely the proper time off to recuperate from her injury.

75. On the matter of Plaintiff's requests for leave, those requests as written together with the documentation prepared by her doctors shows she was not fit to return to work.

76. She submitted the appropriate doctor's notes and documentation to support her requests, but NCCPD still denied her the requested accommodation in violation of the ADA.

77. Providing the accommodation to Plaintiff was reasonable, as with the recommended treatment, Plaintiff was expected to be able to resume her duties as a police officer.

78. Instead, Defendant cut off payment for her treatment, attempted to make her return to work when she was wholly unable to work, and then terminated her from her position when she could not return to work.

79. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, as well as punitive damages and attorneys' fees.

## COUNT II
### Retaliation Based on Disability in Violation of the Americans with Disabilities Act of 1990
### 42 U.S.C. §12101 *et seq*.

80. The allegations of Paragraphs 1 through 79 are incorporated by reference as if fully restated herein.

81. Plaintiff engaged in a protected activity, as she went out on medical leave due to a work-related injury.

82. NCCPD subsequently discontinued payment for treatment for her injury and attempted to make her return to duty despite her doctors refusing to clear her.

83. Plaintiff's last request for additional leave was on January 13, 2017. She requested this leave because she had not been cleared by her doctors to return to work.

84. On January 24, 2017, the county denied her request because of an undue hardship and on February 2, 2017 notified her of her termination.

## COUNT III

**Discrimination Based on Pregnancy in Violation of the Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et al. as Amended by the Pregnancy Discrimination Act of 1978., and the Delaware Discrimination in Employment Act, 19** *Del. C.* **§ 710** *et. seq.*

85. The allegations of Paragraphs 1 through 84 are incorporated by reference as if fully restated herein.

86. Defendant NCCPD employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

87. At all times relevant hereto, Plaintiff was employed by Defendant NCCPD and is an "Employee" as defined by 42 U.S.C. § 2000e(f).

88. Plaintiff received a Right to Sue letter from the EEOC on July 11, 2018. Plaintiff has satisfied all statutory prerequisites for filing this action.

89. NCCPD stopped paying Plaintiff's medical bills as well as her physical and occupational therapy bills as soon as they discovered she was pregnant.

90. Therefore, she was not able to continue the limited treatment allowed during her pregnancy. As a result, her conditioned worsened and spread up her arm.

91. Defendant NCCPD claims they tried to accommodate Plaintiff by attempting to place her in an alternate position. However, according to her doctors, Plaintiff was not able to be placed in any position because she was totally disabled and had a high-risk pregnancy.

92. As soon as Defendant found out Plaintiff was pregnant, they stopped her treatment for her injury, and tried to force her to come back to work because they knew she would not be ready to return and thought they would have cause to terminated her employment.

93. Upon information and belief, other NCCPD officers have been given one to three years to recover from their injuries.

94. These other officers who were not pregnant were treated better than Plaintiff because they were not forced to return early from their leaves and were not forced to stop treatment.

95. These officers were allowed to be at home to recover and were not forced to return to another job.

96. NCC sent Plaintiff a letter in June of 2016, approximately 10 months after her injury while she was pregnant, stating she would have to come back to work.

97. Ultimately, Plaintiff was denied her accommodation request and was treated different than other non-pregnant employees.

98. Defendant engaged in intentional pregnancy discrimination in the terms and conditions of Plaintiff's employment.

99. Therefore, Defendant's discrimination against Plaintiff because she was pregnant constitutes an unlawful employment practice in violation of 42 U.S.C. § 2000e(k).

100. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

101. Defendant has intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT IV
### Breach of the Implied Covenant of Good Faith and Fair Dealing

102. The allegations of Paragraphs 1 through 101 are incorporated by reference as if fully restated herein.

103. Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party to the contract from enjoying the benefits of the contract. This is known as the implied covenant of good faith and fair dealing, and this covenant applies to the employment agreement between Plaintiff and Defendant.

104. The implied covenant of good faith and faith dealing can be breached in Delaware in four circumstances, including where an employer, through fraud or misrepresentation, manipulates the record to create fictitious grounds to terminate employment.

105. Defendant breached the covenant of good faith and fair dealing by terminating Plaintiff based upon false and intentionally manufactured reasoning.

106. NCCPD terminated Plaintiff based upon her disability from an on the job injury and her pregnancy.

107. NCC claimed to terminate Plaintiff because they could not place her in another position. However, the evidence shows she was not able to perform in any position due to her disability and pregnancy.

108. Further, NCC claimed to rely on New Castle County Merit Code provision 26.09.904 and 29.09.905 in its termination letter to Plaintiff.

109. However, those provisions do not apply to Plaintiff's termination from her position as a police officer with NCC.

110. Defendant's breach of the implied covenant of good faith and fair dealing has damaged Plaintiff, financially and professionally.

## COUNT V
### Breach of Contract: Breach of the Collective Bargaining Agreement

111. The allegations of Paragraphs 1 through 110 are incorporated by reference as if fully restated herein.

112. Plaintiff, as a member of the New Castle County Police Department, was entitled to the protections provided by the Collective Bargaining Agreement between New Castle County and the Fraternal Order of Police, Lodge No. 5.

113. Plaintiff is a third-party beneficiary of the contract between New Castle County and the Fraternal Order of Police, and as such, has standing to bring suit to enforce the protections of the Collective Bargaining Agreement.

114. Section 58(f) of the Collective Bargaining Agreement provides, "A permanent probationary or limited-term employee who is temporarily disabled in the line of duty shall receive full pay for the period of his/her disability without charge against his/her vacation or sick leave."

115. Defendants violated this Section of the Collective Bargaining Agreement as they refused to compensate Plaintiff for her disability and would not continue to pay for her to receive the necessary medical treatment for her arm.

116. Plaintiff received a letter on August 1, 2016, that the July invoices for her physical therapy would not be paid despite not sending the invoices to the Utilization Review Board to see if the treatment was appropriate.

117. Defendants willfully and maliciously breached the Collective Bargaining Agreement and terminated Plaintiff in violation of the agreement.

118. Defendants' breach of the Collective Bargaining Agreement has damaged Plaintiff, financially and professionally.

## COUNT VI

**Violation of 14th Amendment Due Process Clause**
**Monell Custom and Policy**

119. The allegations of Paragraphs 1 through 118 are incorporated by reference as if fully restated herein.

120. Defendant NCCPD has a custom and policy which permits it to terminate female officers after one year of being out on injury leave. It does not enforce this same policy for its male officers.

121. Defendant Watson was made "Risk Manager" for NCCPD after the civilian in the position retired, and therefore, was acting as a policymaker for the NCCPD.

122. In the summer of 2016, the former Risk Manager for NCC, Cheryl McDonough had a conversation with another female officer that was out on leave and advised her that Defendant Watson came into her office with a "hit list" of people he wanted terminated.

123. Defendant Watson requested to see medical records and was denied by Ms. McDonough. Upon information and belief, he accessed the medical records anyway.

124. Defendant Watson admitted that he had a list of officers out on leave due to injury that he presented to then-Colonel Setting.

125. The NCCPD has a policy of terminating female officers after one year or less of leave for disability is discriminatory.

126. Through its polices, practices, and or customs the Defendant NCCPD deprived Plaintiff of her rights to substantive due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution, and 42 U.S.C. §1983.

127. As a result, Defendant NCCPD caused Plaintiff to suffer financial and professional damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

A. Declare the conduct by Defendant to be in violation of Plaintiff's statutory rights and common law rights.

B. Awarding Plaintiff any and all consequential damages, including, but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

C. Awarding Plaintiff all compensation due as a result of Defendant's violations herein.

D. Awarding Plaintiff an equal and additional amount as liquidated damages.

E. Awarding Plaintiff costs and reasonable attorney's fees.

F. Awarding Plaintiff pre and post judgment interest at the legal rate.

G. Any and all such other relief as the Court deems appropriate under the circumstances.

**LAW OFFICES OF**
**MICHELE D. ALLEN, LLC**
*/s/ Michele D. Allen*
Michele D. Allen (#4359)
Caitlyn E. Quinn (#6319)
724 Yorklyn Road, Suite 310
Wilmington, DE 19707
302-234-8600
302-234-8602 (fax)
michele@micheleallenlaw.com
*Attorneys for Plaintiff*

Dated: July 30, 2018