**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MELISSA CLEMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 1:18-cv-01120-MN |
| | ) | |
| NEW CASTLE COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR</u>**
**<u>MOTION TO DISMISS, OR IN THE ALTERNATIVE,</u>**
**<u>MOTION FOR A MORE DEFINITE STATEMENT</u>**

NEW CASTLE COUNTY OFFICE OF LAW
Mary A. Jacobson (Bar ID No. 3508)
First Assistant County Attorney
E-mail: majacobson@nccde.org
Laura T. Hay (Bar ID No. 4715)
Assistant County Attorney
E-mail: lhay@nccde.org
Joshua J. Inkell (Bar ID No. 5620)
Assistant County Attorney
E-mail: jjinkell@nccde.org
New Castle County Government Center
87 Reads Way
New Castle, DE 19720
Telephone: (302) 395-5130
Facsimile: (302) 395-5150
*Attorneys for Defendants*

Dated: September 24, 2018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iv

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 2

STATEMENT OF FACTS ............................................................................................. 3

ARGUMENT .................................................................................................................. 5

STANDARD OF REVIEW ............................................................................................ 5

I.      CLEMONS FAILED TO PLEAD FACTS SUFFICIENT TO ESTABLISH
        THAT SHE IS A "QUALIFIED INDIVIDUAL." .................................................. 6

II.     CLEMONS FAILED TO PLEAD FACTS SUFFICIENT TO ESTABLISH A
        PRIMA FACIE CASE OF RETALIATION UNDER THE ADA ........................ 8

        A.      Clemons has not suffered an adverse action ............................................... 9

        B.      The "adverse action" was not contemporaneous with a protected with a
                protected activity ...................................................................................... 10

        C.      There was no causal connection between the protected activity and the
                employer's adverse action ......................................................................... 11

III.    CLEMONS FAILED TO ALLEGE A PRIMA FACIE CASE OF
        DISCRIMINATION UNDER THE PDA AND DDEA ..................................... 11

        A.      Clemons was unable to work because of reasons completely unrelated to
                her pregnancy; therefore she was not qualified for the sought-after position
                as contemplated by the PDA and DDEA .................................................. 11

        B.      Clemons did not suffer an adverse employment action because of her
                pregnancy ................................................................................................. 12

        C.      There was no nexus between the Clemons's pregnancy and the alleged
                "adverse employment action." ................................................................. 13

IV.     THE STATE LAW CLAIMS AND CLAIM FOR BREACH OF IMPLIED
        COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE
        DISMISSED BECAUSE CLEMONS ELECTED A FEDERAL FORUM .......... 14

V.      THE CBA'S GRIEVANCE PROCEDURE BARS CLEMONS'S CLAIMS FOR
        BREACH OF CONTRACT ............................................................................... 15

VI.     CLEMONS FAILS TO STATE A *MONELL* CLAIM ..........................................16

    A.     Clemons fails to allege facts necessary to support a claim that County has adopted an unconstitutional policy, custom or practice...........................17

    B.     Clemons fails to allege facts to support a claim that County's alleged custom, policy or practice was enforced against her ...............................18

VII.    RULE 8 REQUIRES DISMISSAL OF MOST INDIVIDUAL DEFENDANTS ................................................................................................ 19

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andrews v. City of Phila.*,
    895 F.2d 1469 (3d Cir. 1990)..................................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................5

*Berg v. Cty. of Allegheny,*
    219 F.3d 261 (3d Cir. 2000)..................................................................................................17

*Berk v. Ascott Inv. Corp.*,
    759 F. Supp. 245 (E.D. Pa. 1991) .........................................................................................5

*Bielevicz v. Dubinon*,
    915 F.2d 845 (3d Cir. 1990)..................................................................................................18

*Blades v. Mosaic of Del.*,
    2017 WL 3868238 (D. Del. Aug. 31, 2017) ........................................................................15

*Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*,
    520 U.S. 397 (1997)..............................................................................................................17

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)..................................................................................................................9

*Cardenas v. Massey*,
    269 F.3d 251 (3d Cir. 2001)..................................................................................................12

*Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*,
    587 F.3d 176 (3d Cir. 2009)..................................................................................................17

*City of Okla. City v. Tuttle*,
    471 U.S. 808 (1985)..............................................................................................................17

*Conley v. State*,
    2011 WL 113201 (Del. Super. Ct. Jan. 11, 2011) .................................................................9

*Criado v. IBM Corp.*,
    145 F.3d 437 (1st Cir.1998)...................................................................................................7

*Dean v. Christiana Care Health Servs., Inc.*,
    2013 WL 5176761 (D. Del. Sept. 16, 2013) ..........................................................................11

*Durham Life Ins. Co. v. Evans*,
    166 F.3d 139 (3d Cir. 1999) ..................................................................................................12

*E.E.O.C. v. Avecia, Inc.*,
    151 F. App'x. 162 (3d Cir. 2005) ..........................................................................................15

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ..........................................................................................................16

*Estate of Smith v. Marasco*,
    318 F.3d 497 (3d Cir. 2003) ..................................................................................................10

*Farrell v. Planters Lifesavers Co.*,
    206 F.3d 271 (3d Cir. 2000) ..................................................................................................13

*Fletcher v. O'Donnell*,
    867 F.2d 791 (3d Cir. 1989) ..................................................................................................17

*Fogleman v. Greater Hazleton Health All.*,
    122 F. App'x 581 (3d Cir. 2004) ............................................................................................7

*Gardner v. Sch. Dist. of Phila.*,
    636 F. App'x 79 (3d Cir. 2015) ..........................................................................................7, 8

*Hildebrand v. Allegheny Cty.*,
    757 F.3d 99 (3d Cir. 2014) ....................................................................................................17

*Holmes v. City of Wilmington*,
    79 F. Supp. 3d 497 (D. Del. 2015) ........................................................................................17

*Jacobs v. Palmer*,
    2015 WL 1033294 (E.D. Pa. Mar. 10, 2015) ........................................................................6

*Jalil v. Avdel Corp.*,
    873 F.2d 701 (3d Cir.1989) ..................................................................................................10

*Jennings-Fowler v. City of Scranton*,
    680 F. App'x 112 (3d Cir. 2017) ..........................................................................................17

*Kimbro v. Atl. Richfield Co.*,
    889 F.2d 869 (9th Cir. 1989) ..................................................................................................7

*Krouse v. Am. Sterilizer Co.*,
  126 F.3d 494 (3d Cir. 1997) ........................................................................8

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,
  503 F.3d 217 (3d Cir. 2007) ......................................................................13

*McGreal v. Ostrov*,
  368 F.3d 657 (7th Cir. 2004) .....................................................................17

*Mease v. Wilmington Tr. Co.*,
  2007 WL 901550 (D. Del. Mar. 26, 2007) ................................................15

*Meltzer v. City of Wilmington*,
  932 F. Supp. 2d 602 (D. Del. 2013) ..........................................................12

*Mondzelewski v. Pathmark Stores, Inc.*,
  162 F.3d 778 (3d Cir. 1998) ......................................................................12

*Monell v. Dep't of Social Services of the City of New York*
  436 U.S. 658 (1978) .................................................................2, 16, 18, 19

*Moon v. Del. River & Bay Auth.*,
  2006 WL 462551 (D. Del. Feb. 24, 2006) .................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ......................................................................................16

*Nami v. Fauver*,
  82 F.3d 63 (3d Cir. 1996) ............................................................................5

*Nieves v. Acme Markets, Inc.*,
  541 F. Supp. 2d 600 (D. Del. 2008) ..........................................................15

*Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*
  51 F. Supp. 3d 319 (S.D.N.Y. 2014) .........................................................19

*Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd*,
  704 F. App'x 164 (3d Cir. 2017) ...............................................................12

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) ..................................................................................17

*Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ...................................................................5, 6

*Phillips v. Bureau of Prisons,*
   591 F.2d 966 (D.C. Cir.1979) ............................................................................5

*Santiago v. Warminster Twp.,*
   629 F.3d 121 (3d Cir. 2010)................................................................6, 17, 18

*Santora v. Red Clay Consol. Sch. Dist.,*
   580 F. App'x 59 (3d Cir. 2014) .......................................................................17

*Shellenberger v. Summit Bancorp, Inc.,*
   318 F.3d 183 n.9 (3d Cir. 2003).....................................................................10

*Schmidt v. Skolas,*
   770 F.3d 241 (3d Cir. 2014)..............................................................................6

*Schrob v. Matawan Building Supplies,*
   948 F.2d 1402 (3d Cir. 1991)............................................................................5

*Siceloff v. Township of West Deer,*
   2013 WL 3989427 (W.D. Pa. Aug. 2, 2013) ...............................................17

*Simmons v. Abruzzo,*
   49 F.3d 83 (2d Cir. 1995)................................................................................19

*Smith v. New Castle Cty.,*
   IAB Hearing No.1432925 (Nov. 18, 2016) .........................................4, 9, 10, 13

*Walton v. Mental Health Ass'n. of Se. Pa.,*
   168 F.3d 661 (3d Cir. 1999)..............................................................................7

*Watson v. Abington Twp.,*
   478 F.3d 144 (3d Cir. 2007)............................................................................17

*Wilcoxon v. Red Clay Consol. Sch. Dist. Bd. of Educ.,*
   437 F. Supp. 2d 235 (D. Del. 2006)...............................................................15

*Wilgus v. Bayhealth Med. Ctr., Inc.,*
   2018 WL 3559258 (Del. Super. Ct. July 23, 2018) ......................................6

*Williams v. Phila. Hous. Auth. Police Dep't,*
   380 F.3d 751 (3d Cir. 2004)............................................................................10

*Wooleyhan v. Cape Henlopen Sch. Dist.,*
   2011 WL 4048976 (D. Del. Sept. 12, 2011) ................................................17

## RULES

29 C.F.R. § 825.110 ...........................................................................................................9

11 *Del. C.* § 8801 ..............................................................................................................3

19 *Del. C.* § 710, *et. seq.* ...............................................................................................14

19 *Del. C.* § 712(b). ........................................................................................................14

19 *Del. C.* § 714. ............................................................................................................14

19 *Del. C.* § 714(c)..........................................................................................................14

19 *Del. C.* § 720, *et. seq.* ...............................................................................................14

19 *Del. C.* § 722 (5) .........................................................................................................6

19 *Del. C.* § 723 ..............................................................................................................6

19 *Del. C.* § 727(a)..........................................................................................................14

19 *Del. C.* § 2304 ...........................................................................................................13

19 *Del. C.* § 2322F (d), (j) ...............................................................................................4

19 *Del. C.* § 2347 ...........................................................................................................13

9 U.S.C. § 2 ...................................................................................................................16

42 U.S.C. § 1983 ...........................................................................................................16

42 U.S.C. § 2000e *et al*. ..................................................................................................11

42 U.S.C. § 12112(a) .......................................................................................................6

42 U.S.C. § 12111(8) ........................................................................................................6

Fed. R. Civ. P. 8 .....................................................................................................2, 19, 20

Fed. R. Civ. P. 12(b)(6)......................................................................5, 8, 11, 14, 15, 16, 19, 20

Fed. R. Civ. P. 12(e) .......................................................................................................20

## NATURE AND STAGE OF THE PROCEEDINGS

On July 30, 2018, Plaintiff Melissa Clemons ("Clemons") filed a Complaint naming New Castle County ("County"), the New Castle County Police Department ("NCCPD"), and numerous County officials and employees, in their official and individual capacities, as defendants (collectively referred to as "County").[1]   Clemons's allegations include: discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Delaware Persons with Disabilities Employment Protections Act ("DEPA")(Count I); retaliation based on disability in violation of the ADA (Count II); discrimination based on pregnancy in violation of the Pregnancy Discrimination Act ("PDA") of 1978 and the Delaware Discrimination in Employment Act ("DDEA")(Count III); breach of the implied covenant of good faith and fair dealing (Count IV); breach of contract related to a collective bargaining agreement ("CBA")(Count V); and, violation of the 14th Amendment Due Process Clause (Count VI).[2]

The County filed a motion to dismiss, or in the alternative, a motion for a more definite statement.  This is Defendants' Opening Brief in Support of the Motion.

---

[1] D.I. 1.

[2] *Id.*

## SUMMARY OF ARGUMENT

1.      Count I should be dismissed because Clemons failed to plead facts sufficient to establish that she is a "qualified individual" under the ADA and DEPA.  The Complaint admits Clemons was unable to return to work with reasonable accommodations.

2.      Count II should be dismissed because Clemons failed to plead facts sufficient to establish a *prima facie* case of retaliation under the ADA.

3.      Count III should be dismissed because Clemons failed to plead facts sufficient to establish a *prima facie* case of discrimination under the PDA and DDEA.

4.      County IV should be dismissed because Clemons's allegations concerning the implied covenant of good faith and fair dealing are barred by Clemons election of a federal forum.

5.      Count V should be dismissed since the grievance procedure in the CBA bars Clemons's claims for breach of contract.

6.      Count VI should be dismissed because Clemons failed to plead facts sufficient to establish a violation of the 14th Amendment pursuant to *Monell*.

7.      Matthew Meyer, Vaughn M. Bond, Jr., and Vanessa S. Phillips should be dismissed because Clemons failed to provide adequate notice as required by Fed. R. Civ. P. 8 ("Rule 8").

8.      If the Motions to Dismiss are not Granted then Clemons should provide a more definite statement of the Complaint to correct the vagueness and ambiguities that may be more accurately characterized as omissions and misrepresentations that - if corrected - will negate many of the allegations as stated in the Complaint.

## STATEMENT OF FACTS

Clemons injured her hand during a work-related training exercise on September 23, 2015.[3]  Clemons remained on paid leave from NCCPD for more than seventeen months while she sought treatment for the injury.  While on paid leave, Clemons became pregnant and gave birth.[4]  Clemons did not return to work and was terminated on March 10, 2017.[5]  Clemons has neither asked to be reinstated nor alleged that she could have returned work after seventeen months of medical treatment.  Rather, Clemons acknowledges that her condition had not improved with medical treatment - and indeed had worsened - and that she was "totally disabled."[6]  Despite this, Clemons alleges that she was entitled to an accommodation of ostensibly unlimited and unquantifiable "proper time off"[7] to treat a condition that was not improving and for which she received: (1) a disability pension, (2) wage supplemental payments under the Delaware Worker's Compensation Statute, (3) a permanency award, and (4) a disfigurement award.[8]

After Clemons had been on leave for more than one year *and* after her doctor opined that her only limitation was no use of her left hand, the County asked Clemons to return to work, in a position that would accommodate her limitation.[9]  After the County requested her return,

---

[3] D.I. 1 ¶ 23.

[4] *Id.* ¶¶ 28, 51.

[5] *Id.* ¶ 54 (Plaintiff only provides the date she was notified of her termination).

[6] *Id.* ¶¶ 42, 43, 72, 90, 91 (Plaintiff was "totally disabled and had a high-risk pregnancy").

[7] *Id.* ¶ 74.

[8] See Letter from State of Delaware Office of Pensions to Clemons approving pension consistent with 11 *Del. C.* § 8801 (May 17, 2017) (Exhibit A); State of Delaware Office of Workers' Compensation Agreement As To Compensation (approved Feb. 28, 2018) (awarding Temporary Partial Disability) (Exhibit B); State of Delaware Office of Workers' Compensation Agreement As To Compensation (approved Aug. 21, 2017) (awarding Disfigurement) (Exhibit C); State of Delaware Office of Workers' Compensation Agreement As To Compensation (approved Aug. 21, 2017) (awarding Permanent Partial Disability) (Exhibit D).

[9] D.I. 1 ¶¶ 31, 50.

Clemons sought additional leave under the Family and Medical Leave Act ("FMLA") and ADA.[10]  Clemons had not worked the requisite hours in the calendar year to qualify for FMLA, but the County provided eight weeks of additional paid leave (followed by four more) as a courtesy.  Upon expiration of the additional leave, the County notified Clemons of its intention to terminate her employment because she would not return to work.[11]

The County has paid all of Clemons's medical bills since the date of her injury.[12]  Bills for medical service on July 6, 7, 8 and 13, 2016 were denied initially for a "Utilization Review," but the County issued payment on August 12, 2016.[13]  Notwithstanding the payment, Clemons filed a petition with the Delaware Industrial Accident Board ("IAB") for payment of medical bills and claimed retaliation based on the initial denial of payment because "she was called into human resources for job placement and then terminated when her physician kept her out of work on total disability."[14]  The IAB considered and dismissed the petition.[15]

A collective bargaining agreement ("CBA") governs Clemons's employment and establishes working conditions and other terms of employment, and includes provisions for the resolution of grievances.[16]  Clemons filed a grievance, which is in the process of being adjudicated.[17]  The final step of the CBA grievance process is final and binding arbitration.[18]

---

[10] *Id.* ¶ 51.

[11] *Id.* ¶ 54.

[12] *Smith v. New Castle Cty.*, IAB Hearing No.1432925, at 1, 2 (Nov. 18, 2016) (Exhibit E).

[13] *Id.*  See also, 19 *Del. C.* § 2322F (d), (j) (allowing delay of payment under Delaware Worker's Compensation Statute to allow for review of "treatments, evaluations, and therapy" to determine compliance with practice guidelines).

[14] *Id.*

[15] *Id.*

[16] Ex. F ¶¶ 1, 12.  (Collective Bargaining Agreement attached hereto as Ex. F).

[17] *See generally*, D.I. 1 ¶ 59 (The Step 2 hearing began, but was postponed).

[18] Ex. F ¶ 17(c).

## ARGUMENT

### STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), the Court must accept as true all well-pleaded allegations and all reasonable inferences which may be drawn therefrom in order to ascertain whether the complaint states a claim for which plaintiff may be entitled to relief.[19]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20]  This standard requires "more than a sheer possibility that a defendant has acted unlawfully"[21] but is met only when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]

When deciding a motion to dismiss, the Court may consider certain documents that were not attached to the complaint.  The Court generally considers an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[23]  Even if the plaintiff's claim is not based directly on an extrinsic document, the Court may consider it when a plaintiff does not dispute its authenticity.[24]  The Court also may consider matters of public record, such as trial transcripts and dockets, "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply

---

[19] *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Schrob v. Matawan Building Supplies*, 948 F.2d 1402, 1408 (3d Cir. 1991).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21] *Id.*

[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.

[23] *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (*citing Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C. Cir.1979) (published reports of administrative bodies can be considered in a motion to dismiss)).

[24] *Berk v. Ascott Inv. Corp.*, 759 F. Supp. 245, 249 (E.D. Pa. 1991) (internal citation omitted).

by failing to attach a dispositive document on which it relied."[25]

Claims that are nothing more than legal conclusions are ripe for dismissal in a motion to dismiss.[26]   Moreover, allegations of "naked assertions devoid of factual enhancement," and "threadbare recitals of the elements of a cause of action" should be dismissed.[27]

## I.   CLEMONS FAILED TO PLEAD FACTS SUFFICIENT TO ESTABLISH THAT SHE IS A "QUALIFIED INDIVIDUAL."

Clemons claims she was discriminated against because she was not provided proper time off to recuperate from her work-related injury.[28]   However, the Complaint clearly indicates that, even with additional time off, Clemons would not be capable of performing the essential functions of her job.   This is a fatal flaw that requires dismissal of the Count I claims alleging violations of the ADA and DEPA.[29]

The ADA prohibits discrimination against a qualified individual on the basis of disability."[30]   A "qualified individual" is a person "who with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires.[31]   "[T]he plaintiff bears the initial burden of proving that [s]he is

---

[25] 998 F.2d at 1196 (internal citations omitted); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[26] *Jacobs v. Palmer*, 2015 WL 1033294, at *6 (E.D. Pa. Mar. 10, 2015).

[27] *Id.* (*citing Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

[28] D.I. 1 ¶¶ 70-79.

[29] DEPA tracks the language of the ADA and requires a person be a "qualified person with a disability" to receive protection under the act.   19 *Del. C.* § 723.   A "qualified person with a disability" is "a person with a disability who, with or without reasonable accommodation, can satisfactorily perform the essential functions of the job in question."   19 *Del. C.* § 722 (5).

[30] 42 U.S.C.  § 12112(a).   When interpreting and applying DEPA, the Delaware General Assembly provided the federal ADA should be used.   *Wilgus v. Bayhealth Med. Ctr., Inc*., 2018 WL 3559258, at *2 (Del. Super. Ct. July 23, 2018).

[31] 42 U.S.C. § 12111(8).

qualified."[32]  If an accommodation is needed to perform the essential functions of the job, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified."[33]

A leave of absence "may be a reasonable accommodation when the plaintiff offers evidence that leave would be *temporary* and 'would enable the employee to perform his essential job functions in the *near future*.'"[34]  However, courts have held that "[a] blanket requirement that an employer allow leave is beyond the scope of the ADA when the absent employee simply will not be performing the essential functions of her position."[35]  Even when an employer provides an extended leave of absence, cessation of such leave does not violate the ADA because granting the leave of absence in the first place exceeded the requirements of the ADA.[36]

In a similar case, a police officer was injured in the line of duty and sought accommodations by way of leaves of absence in various forms for more than two years.[37]  The Court dismissed plaintiff's ADA complaint as the record did "not support the conclusion that [the] accommodations would have qualified him to perform the essential functions of his position" because plaintiff's physicians repeatedly opined that he was unable to work and he did

---

[32] *Gardner v. Sch. Dist. of Phila.*, 636 F. App'x 79, 83–84 (3d Cir. 2015) (internal citations and quotations omitted).

[33] *Id.*

[34] *Id.* (emphasis added).  *See also Criado v. IBM Corp.,* 145 F.3d 437, 444 (1st Cir.1998) (leave was reasonable when doctor's note indicated that leave would be temporary to design treatment plan to allow the plaintiff to return to work); *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 878 (9th Cir. 1989) (temporary leave was reasonable when migraines would last "no longer than a few months, followed by long periods of relative remission").

[35] *Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d 661, 671 (3d Cir. 1999); *Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 586 (3d Cir. 2004) (internal citations omitted) (open ended leave of absence is not a reasonable accommodation).

[36] *Walton,* 168 F.3d 661, 671.

[37] *Gardner*, 636 F. App'x at 80-81.

not work for approximately two years.[38]  The Court found that there was no evidence that the plaintiff was going to be able to work "in the near future."[39]

As in *Gardner*, Clemons has not alleged that she would be able to perform the essential functions of the job with the proposed accommodation – additional paid leave.  She also refused the offer of the County to work in a position that would accommodate her alleged disability[40]. The only facts Clemons alleges show that even had she received an accommodation of a longer paid leave of absence, she would not be able to work.

Clemons has failed to plead a *prima facie* case of discrimination under the ADA and the Delaware Persons with Disabilities Employment Protections Act therefore Count I of the Complaint should be dismissed pursuant to Rule 12(b)(6).

## II.  CLEMONS FAILED TO PLEAD FACTS SUFFICIENT TO ESTABLISH A PRIMA FACIE CASE OF RETALIATION UNDER THE ADA.

Clemons's claim for retaliation alleges that Defendants discontinued payment for treatment related to her injury and attempted to make her return to work despite her doctors' refusal to clear her for work."[41]  Clemons also appears to allege that she was retaliated against when her request for additional paid leave was denied on February 2, 2017.[42]

To plead a *prima facie* claim for retaliation based on the ADA, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and, (3) a causal connection between the employee's protected activity and the employer's adverse action." [43]

---

[38] *Id*. at 84.

[39] *Id*. at 85.

[40] D.I. ¶¶ 30-39.

[41] *Id.* ¶ 82.

[42] *Id.* ¶ 84.

[43] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

**A. Clemons has not suffered an adverse action.**

To qualify as an adverse action, the action must be such "that a reasonable employee would have found the challenged action materially adverse, [meaning] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." [44]

Omitted from the Complaint is the fact that the four medical bills that initially were denied for payment were paid within two months. [45] The IAB already made a finding that the delay was justified because the medical bills at issue were being submitted for a "Utilization Review." [46] Clemons also omits from the Complaint that the County paid for fourteen ATI Physical Therapy visits and four other medical provider bills between the time County found out Clemons was pregnant and the time the four medical bills initially were denied. The Complaint does not, and Clemons cannot, allege nonpayment of any bill for medical treatment related to her hand injury. Furthermore, delayed payment of medical bills in compliance with Delaware law and a prior adjudication by the IAB that the delay was justified is not an "adverse action."

Clemons's implies that the denial of her request for additional leave was retaliatory. However, denial of such leave would not be an "adverse action" under the facts of this case. Plaintiff was not entitled to leave under the ADA because there was no evidence alleged that she would have been able to perform the essential functions of her job if additional leave was provided. [47]

Finally, encouraging someone to return to work could not possibly be an "adverse

---

[44] *Conley v. State*, 2011 WL 113201, at *7 (Del. Super. Ct. Jan. 11, 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

[45] See Exhibit E, *Smith v. New Castle Cty.*, IAB Hearing.

[46] *Id.*

[47] Moreover, Plaintiff was not entitled to leave under the FMLA because, reading her Complaint in totality, she did not work at all in the 12 months preceding her request. FMLA requires 1,250 hours to be worked in the preceding 12 months to be eligible for leave. 29 C.F.R. § 825.110.

action."  Moreover, the two alleged "adverse actions" must be viewed as two separate and distinct acts because they were separated by more than six months.  When each is considered individually, they are even less likely to be "adverse actions" under the ADA.  For these reasons Plaintiff cannot demonstrate, and has not plead, a prima facie case establishing she suffered an "adverse action" and Count I should be dismissed.

### B. The "adverse action" was not contemporaneous with a protected activity.

"[T]he timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred."[48]  When "temporal proximity is not so close as to be unduly suggestive . . . timing plus other evidence may be an appropriate test . . . ."[49]

According to the Complaint, Clemons was out of work beginning September 24, 2015.[50] The alleged "discontinued payment of medical bills" occurred in July of 2016, but the bills were paid in August 2016, and the IAB already has determined that the delay in payment was justified.[51]

She also appears to allege additional retaliation for denial of additional leave on January 24, 2017 based upon her request for additional leave submitted on January 13, 2017, after being on paid leave for sixteen months prior.  To the extent that the actions alleged by Clemons were "adverse" for purposes of retaliation under the ADA, such a gap in time, without any additional evidence, breaks any causal link between the "adverse action" and Clemons's claimed protected

---

[48] *See, e.g., Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 n.9 (3d Cir. 2003) (ten days between termination and comments made by supervisor established *prima facie* showing of causation); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (two days between protected activity and alleged retaliation sufficient to establish *prima facie* showing of causation).

[49] *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003); *see also, Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 757 (3d Cir. 2004) (two months without other evidence of causal connection was not sufficient).

[50] D.I. 1 ¶ 23.

[51] See Exhibit E, *Smith v. New Castle Cty.*, IAB Hearing.

activity.

**C. There was no causal connection between the protected activity and the employer's alleged adverse action.**

Other than the innuendo, Clemons fails to plead any causal connection between the protected activity and the claimed "adverse action" to satisfy the third element of her claim.

Therefore, Clemons's claim for retaliation under the ADA (Count II) should be dismissed pursuant to Rule 12(b)(6).

**III.   CLEMONS FAILED TO ALLEGE A PRIMA FACIE CASE OF DISCRIMINATION UNDER THE PDA AND DDEA.**

Clemons claims discrimination in violation of Title VII of the Civil Rights Act of 1964 as Amended by the Pregnancy Discrimination Act of 1978 ("PDA")[52] because the County allegedly stopped paying for her medical treatment[53] and treated her differently than non-pregnant women by trying to force her to come back to work once County found out she was pregnant.[54]

To establish a *prima facie* case of discrimination under the PDA, a plaintiff must demonstrate that: (1) the employer had actual knowledge of her pregnancy;[55] (2) she was qualified for the sought-after position; (3) she suffered an adverse employment action; and, (4) there was a nexus between the her pregnancy and the adverse employment action.[56]

**A. Clemons was unable to work because of reasons completely unrelated to her pregnancy; therefore she was not qualified for the sought-after position as contemplated by the PDA and DDEA.**

As discussed in Argument I *supra*, Clemons was not qualified for the job because she could not work.  Clemons has not alleged a single fact to demonstrate that she was capable of

---

[52] 42 *U.S.C.* § 2000e *et al.*

[53] D.I. 1 ¶ 89.

[54] *Id.* ¶ 92, 94-95.

[55] Defendants do not dispute they had knowledge of Plaintiff's pregnancy.

[56] *Dean v. Christiana Care Health Servs., Inc.*, 2013 WL 5176761, at *2 (D. Del. Sept. 16, 2013).

performing her job with the claimed accommodation of additional leave, but instead provides only a conclusory statement that she was "qualified for the position," notwithstanding her pregnancy.[57] This statement directly contradicts other allegations in the Complaint showing that she would be able to work with additional leave.[58]

### B. Clemons did not suffer an adverse employment action because of her pregnancy.

To qualify as an adverse employment action in the discrimination context, an action must create "a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a significant change in benefits."[59] The "adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."[60]

Clemons does not contend that she was terminated in relation to her pregnancy.[61] Instead, her allegations of adverse employment action include stopping payment for medical treatment unrelated to her pregnancy and encouraging her to come back to work "early".[62] Failure to pay medical bills, which were in fact paid within two months, cannot be said to be an adverse employment action because it was not "serious and tangible enough to alter an

---

[57] D.I. 1 ¶ 74.

[58] *Id.* ¶¶ 27, 28, 34, 36, 44, 50, 52, 53; and, 91 (Plaintiff was "totally disabled and had a high-risk pregnancy").

[59] *Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd*, 704 F. App'x 164, 168 (3d Cir. 2017) (reassignment is not an adverse action when it did not affect job title, benefits, or compensation).

[60] *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *see also Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999) (depriving insurance broker of a secretary and an office and taking work related files could constitute a tangible adverse action); *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788 (3d Cir. 1998) (changes in shift schedule can be an adverse action); *but see Meltzer v. City of Wilmington*, 932 F. Supp. 2d 602, 611 (D. Del. 2013) (change in job duties without a change in pay or benefits is not an "adverse action").

[61] D.I. 1.

[62] D.I. 1 ¶ 89, 92, 94, 95.

employee's compensation, terms, conditions, or privileges of employment."[63]   Furthermore, encouraging Clemons to work was not an adverse employment action and did not change the terms or conditions of her employment in any way.

**C. There was no nexus between Clemons's pregnancy and the alleged "adverse employment action."**

Clemons also must show that the employer took "adverse action" because of the plaintiff's protected action.  This can be done by showing that there was a nexus between her pregnancy and the adverse employment action.  "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment."[64]  Days, not months, satisfy the requirement because of the "unusually suggestive" timing.[65]

Clemons has not alleged that County failed to pay any medical bills relating to her pregnancy.  Clemons told NCCPD she was pregnant on May 17, 2016.[66]  Four medical bills, dated July 6, 7, 8, and 13 2016, were denied.[67]  The County paid them within two months of the initial justified denial.[68]

Certainly the two month delay between learning of Clemons's pregnancy and denial of

---

[63]  In Delaware, the Worker's Compensation Statute is the exclusive remedy for employees alleging a failure to pay medical bills for a work-related injury, with the Industrial Accident Board as the sole forum for deciding such disputes.  19 *Del. C.* §§ 2304, 2347.  To the extent Plaintiff alleges that her medical bills were not paid, the only forum for addressing such complaints is the IAB.  Furthermore, the IAB has already decided that the delay in payment of the medical bills was justified as a "Utilization Review."  See Exhibit E, *Smith v. New Castle Cty.*, IAB Hearing.

[64]  *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (internal citations omitted).

[65]  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

[66]  D.I. 1 ¶ 28.

[67]  The County paid for fourteen ATI Physical Therapy visits and four other medical provider bills between the time they found out Plaintiff was pregnant and the time the four medical bills were denied.

[68]  See Exhibit E, *Smith v. New Castle Cty.*, IAB Hearing.

medical bills, while multiple medical bills were paid between learning of her pregnancy and the first denial, cannot be said to "unusually suggestive" of a nexus between Clemons's pregnancy and the "adverse action."  This is especially the case when the IAB already held the delay in payment was justified as a "Utilization Review."[69]

Clemons has failed to allege facts sufficient to establish the second, third, and fourth elements of a *prima facie* case of discrimination under the PDA and therefore Count III should be dismissed pursuant to Rule 12(b)(6).

## IV.     THE STATE LAW CLAIMS AND CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED BECAUSE CLEMONS ELECTED A FEDERAL FORUM.

Clemons has chosen a federal forum and federal remedies for relief, and accordingly, her state claims should be dismissed.  Count I of the Complaint contains allegations of discrimination based on the Delaware Persons with Disabilities Employment Protections Act.[70] Count III contains allegations of discrimination based on the Delaware Discrimination in Employment Act.[71]  Count IV alleges a breach of the implied covenant of good faith and fair dealing.  Each should be dismissed.

Both of the Delaware Acts have similar election of remedies provisions.[72]  Specifically, the "sole remedy for claims alleging a violation of this subchapter to the exclusion of all other remedies"[73] and Plaintiff is "barred . . . from filing cases in *both* Superior Court and the federal forum."[74]

---

[69] *Id.*

[70]  19 *Del. C.* § 720, *et. seq.*

[71] 19 *Del. C.* § 710, *et. seq.*

[72] 19 *Del. C.* § 714 (election of remedies for DDEA); 19 *Del. C.* § 727(a) (election of remedies for DEPA) (incorporating the enforcement provision of 19 *Del. C.* § 714).

[73] 19 *Del. C.* § 712(b).

[74] 19 *Del. C.* § 714(c) (emphasis added).

This Court has held that the Delaware statutory requirement, which requires a plaintiff to elect a forum, also limits a plaintiff's remedies.[75]  Furthermore, this Court has held that "plaintiff cannot assert a common law claim for the breach of the implied covenant of good faith and fair dealing where the Delaware state statute provides the exclusive remedy."[76]  A claim for breach of the implied covenant of good faith and fair dealing "is preempted by Delaware statutes that provide the exclusive remedy for relief."[77]

Because Clemons has chosen a federal forum and federal remedies for her claims, her claims based on state-based law including DEPA (Count I), DDEA (Count III), and breach of good faith and fair dealing (Count IV) must be dismissed pursuant to Rule 12(b)(6).

## V.   THE CBA'S GRIEVANCE PROCEDURE BARS CLEMONS'S CLAIMS FOR BREACH OF CONTRACT.

Clemons alleges a breach of contract for violation of the CBA.[78]  Ultimately, Clemons alleges the County breached the CBA by failing to provide her wages, failing to make medical treatment payments, and eventually terminating her employment.[79]

The CBA applies to "all disputes concerning the interpretation and application of [the] Agreement" and the exclusive remedy for grievances is compliance with the grievance

---

[75] *Mease v. Wilmington Tr. Co.*, 2007 WL 901550, at *2 (D. Del. Mar. 26, 2007) (declining to exercise supplemental jurisdiction over the plaintiff's claims for breach of the implied covenant of good faith and fair dealing and violations of the Delaware employment discrimination statute because it provides for "election of remedies, not just an election of forum") (internal quotations omitted).

[76] *Wilcoxon v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 437 F. Supp. 2d 235, 247 (D. Del. 2006); *Nieves v. Acme Markets, Inc.*, 541 F. Supp. 2d 600, 610 (D. Del. 2008) (citing *E.E.O.C. v. Avecia, Inc.,* 151 F. App'x. 162 (3d Cir. 2005)); *Moon v. Del. River & Bay Auth.,* 2006 WL 462551, at *4 (D. Del. Feb. 24, 2006)).

[77] *Blades v. Mosaic of Del.*, 2017 WL 3868238, at *3 n.3 (D. Del. Aug. 31, 2017).

[78] D.I. 1 ¶¶ 115-117.

[79] *Id.*

procedures, which include binding arbitration.[80]   Arbitration agreements are "valid, irrevocable, and enforceable,"[81] and there is "a liberal federal policy favoring arbitration agreements."[82] Federal Courts are instructed to enforce arbitration agreements according to their terms.[83]   A Court may refuse to enforce arbitration agreements only upon "generally applicable contract defenses, such as fraud, duress, or unconscionability."[84]   The parties' chosen arbitration procedures also must be enforced.[85]

Clemons's allegations are a dispute concerning the interpretation and application of the CBA agreement.   Therefore, the only remedy for these claims is the grievance procedures. Accordingly, Count V of the Complaint must be dismissed pursuant to Rule 12(b)(6).

## VI.   CLEMONS FAILS TO STATE A *MONELL* CLAIM.

Count VI of the Complaint alleges that NCCPD has an unconstitutional custom and policy of terminating officers after one year or less of injury leave that applies only to female officers but not male officers.[86]   Municipal liability under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Social Services of the City of New York*.[87]   Pursuant to *Monell*, a plaintiff seeking to hold a municipality liable under section 1983 must: (1) "identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the 'moving force' behind the injury alleged; and (3) demonstrate a

---

[80] Ex. F, ¶¶ 12, 17(c).

[81] 9 U.S.C. § 2.

[82] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (internal citations omitted).

[83] *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

[84] *Id.* at 1616 (internal citations omitted).

[85] *Id.*

[86] D.I. 1 ¶¶ 120, 125, 126.

[87] 436 U.S. 658 (1978).

direct causal link between the municipal action and the alleged deprivation of federal rights."[88]

### A. Clemons fails to allege facts necessary to support a claim that County has adopted an unconstitutional policy, custom or practice.

Policy is created "when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."[89]  Customs are "practices of state officials so permanent and well settled as to virtually constitute law."[90] Plaintiff must show a pattern that demonstrates "considerably more proof than a single incident" to establish a custom.[91]  To show a policy, custom or practice, a plaintiff must articulate facts to indicate "that a [decision-maker] is responsible either for the policy or, through acquiescence, for the custom."[92]  "The plaintiff must first allege that a defendant is a final policymaker.  Only then can a court proceed to the next question of whether the single act or single decision of that defendant constituted municipal policy."[93]

Clemons alleges that Defendant Watson was made risk manager for NCCPD and

---

[88] *Holmes v. City of Wilmington*, 79 F. Supp. 3d 497, 511 (D. Del. 2015) (*citing Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397 (1997)).

[89] *Santora v. Red Clay Consol. Sch. Dist.,* 580 F. App'x 59, 62 (3d Cir. 2014) (citing *Berg v. Cty. of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000) (citations and internal quotation marks omitted)); *Andrews v. City of Phila.*, 895 F.2d 1469 (3d Cir. 1990) (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (internal quotations omitted)).

[90] *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 118 (3d Cir. 2017) (citing *Andrews,* 895 F.2d 1469); *Hildebrand v. Allegheny Cty.,* 757 F.3d 99, 110 (3d Cir. 2014) (citing *Watson v. Abington Twp.,* 478 F.3d 144, 155-56 (3d Cir. 2007); *Wooleyhan v. Cape Henlopen Sch. Dist.*, 2011 WL 4048976, at *4 (D. Del. Sept. 12, 2011) (citing *Berg*, 219 F.3d at 275).

[91] *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985).  *See also Siceloff v. Township of West Deer*, 2013 WL 3989427, at *12 (W.D. Pa. Aug. 2, 2013) ("occasional violations generally do not rise to the level of a policy or custom.").  *But see Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) ("if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy. . . .") (*citing Tuttle*, 471 U.S. 808 (plurality opinion)).

[92] *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009).

[93] *Santiago v. Warminster Twp.,* 629 F.3d 121, 135 (3d Cir. 2010) (citing *McGreal v. Ostrov*, 368 F.3d 657, 685 (7th Cir. 2004)).

therefore was a policymaker.[94]   However, Clemons next alleges that Watson had a list of persons that were on leave due to work-related injuries and that he presented the list to Cheryl McDonough, the actual County Risk Manager, and to his supervisor, Colonel Elmer Setting.[95] Clemons fails to allege that a County policy is established by Watson presenting a list to the Risk Manager and to Colonel Setting.   Clemons has failed to allege any facts that identify a decision maker possessing final authority who established any alleged unconstitutional policy, custom or practice.

### B. Clemons fails to allege facts to support a claim that County's alleged custom, policy or practice was enforced against her.

"Under *Monell*, for municipal liability to attach, any injury must be inflicted by 'execution of a government's policy or custom.'"[96]   Municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts fairly may be said to represent official policy, inflicts the injury."[97]   The Third Circuit has held that where the plaintiff fails to properly plead that that her injury was inflicted by "execution of [defendant's] policy or custom, she has no claim."[98]

Assuming *arguendo* that a custom or policy of terminating female, but not male, officers after one year or less of disability leave actually existed, Clemons fails to plead any facts that show that such a custom or policy was enforced against *her*.   As the Complaint recites, Clemons began her disability leave on September 24, 2015.[99]   She was notified of her pending termination

---

[94] D.I. 1 ¶ 121.

[95]  D.I. 1 ¶¶ 122, 124.

[96] *Santiago,* 629 F.3d at 135 (citing *Monell*, 436 U.S. at 694).

[97] *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990) (citing *Monell* at 694).

[98] *Santiago,* 629 F.3d at 135 (internal quotation marks omitted).

[99] D.I. 1 ¶ 27.

on February 2, 2017,[100] and terminated effective March 10, 2017, seventeen months after the commencement of her leave.[101]  The Complaint clearly alleges that Clemons was terminated well after one year – thus, any policy requiring termination within one year or less of disability certainly was not applied to her.  Therefore, she has failed to state a *Monell* claim for which relief can be granted, and Count VI should be dismissed pursuant to Rule 12(b)(6).

## VII.   RULE 8 REQUIRES DISMISSAL OF MOST INDIVIDUAL DEFENDANTS.

In the event the Court does not dismiss the entirety of the Complaint pursuant to the arguments presented herein, the Court should dismiss Defendants Matthew Meyer, Vaughn M. Bond, Jr., and Vanessa S. Phillips for failure to provide notice pursuant to Rule 8.

Rule 8 requires that a pleading give "fair notice" of the claims asserted.[102]  Fair notice is that which will enable the adverse party to answer and prepare for trial.[103]  Rule 8 requires dismissal of individuals who are not alleged to have committed specific acts that damage a plaintiff.  In *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, the Southern District of New York examined a complaint that mentioned certain defendants as witnesses, but not as individuals who caused harm to the plaintiff.[104]  The court dismissed the complaint as against these defendants for lack of fair notice of any claims alleged against them.[105]

The Complaint makes bare reference to Matthew Meyer, Vaughn M. Bond, Jr., and Vanessa S. Phillips without alleging that they caused her harm.[106]  Therefore, Rule 8 requires the dismissal of these individual defendants.

---

[100] D.I. 1 ¶ 54.

[101] The undisputable facts reflect that Clemons's employment was terminated on March 10, 2017, over seventeen months after her leave commenced.

[102] *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995).

[103] *Id.*

[104] 51 F. Supp. 3d 319, 350 (S.D.N.Y. 2014).

[105] *Id.*

[106] D.I. 1 ¶¶ 13, 14, 15 (the Complaint refers to these individuals in only the Parties section).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Honorable Court dismiss all Counts of Plaintiff's Complaint with prejudice for failing to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

In the alternative, Defendants seek dismissal of Defendants Matthew Meyer, Vaughn M. Bond, Jr., and Vanessa S. Phillips for failure to provide notice pursuant to Rule 8.

Finally, to the extent the Court does not dismiss any Count of Plaintiff's Complaint, Defendants seek an Order directing Plaintiff to file a more definitive statement pursuant to Fed. R. Civ. P. 12(e) to supply factual averments sufficient to meet their burden of pleading a *prima facie* case with respect to any Count left remaining.

Respectfully submitted,
NEW CASTLE COUNTY OFFICE OF LAW

*/s/ Joshua J. Inkell*
Mary A. Jacobson (Bar ID No. 3508)
First Assistant County Attorney
E-mail: majacobson@nccde.org
Laura T. Hay (Bar ID No. 4715)
Assistant County Attorney
E-mail: lhay@nccde.org
Joshua J. Inkell (Bar ID No. 5620)
Assistant County Attorney
E-mail: jjinkell@nccde.org
New Castle County Government Center
87 Reads Way
New Castle, DE 19720
Telephone: (302) 395-5130
Facsimile: (302) 395-5150
*Attorneys for Defendants*

Dated: September 24, 2018