IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MELISSA CLEMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1120 (MN) |
| | ) |
| NEW CASTLE COUNTY, MATTHEW MEYER, New Castle County Executive, VAUGHN M. BOND, JR., Chief of New Castle County Police, VANESSA S. PHILLIPS, Chief Human Resources Office, and LIEUTENANT COLONEL QUINTON WATSON, in their official and individual capacities. | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Michele D. Allen, ALLEN & ASSOCIATES, Wilmington, DE – attorneys for Plaintiff

Mary A. Jacobson, Laura Thomas Hey, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, DE – attorneys for Defendants

October 8, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Defendants Matthew Meyer, Vaughn M. Bond, Jr., Vanessa S. Phillips, and Lieutenant Colonel Quinton Watson's ("the Individual Defendants") and New Castle County ("NCC") (collectively with the Individual Defendants "Defendants") to dismiss Plaintiff Melissa Clemons' ("Plaintiff") First Amended Complaint ("Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* D.I. 25). For the reasons set forth below, the Court will GRANT Defendants' motion.

**I.   BACKGROUND**

Plaintiff was employed with the New Castle County Police Department ("NCCPD") from July 6, 2004 until February 2, 2017. (D.I. 20 ¶¶ 22, 59). On September 23, 2015, while working as a Police Officer with NCCPD, Plaintiff injured her left hand during a training exercise. (*Id.* ¶ 23). NCC required Plaintiff to see Dr. Sowa after her injury. (*Id.* ¶ 24). Plaintiff underwent an initial evaluation with Dr. Sowa on September 24, 2015, after which he determined that Plaintiff was unable to work because of "her pain levels and immobility." (*Id.* ¶ 27). Plaintiff continued to see Dr. Sowa for her injury until June 5, 2016, at which point he stated that her condition "was out of his realm of expertise, [and] there was nothing more he could do for her so he referred her to Johns Hopkins." (*Id.* ¶ 30). He gave her a restriction against use of her left hand, and "stated other restrictions had to come from other physicians or specialists." (*Id.* ¶ 31).[1] Plaintiff saw her primary care physician and a doctor at Johns Hopkins who both opined that Plaintiff should not return to work. (*Id.* ¶¶ 34-38). Prior to Dr. Sowa's statements on June 5, 2016, Plaintiff had informed her supervisor at NCCPD that she was pregnant. (*Id.* ¶ 28).

---

[1]   Plaintiff alleges that Dr. Sowa did not release her to work (*id.*), but also asserts that "NCC relied solely on Dr. Sowa's opinion in deciding she was able to return to work." (*Id.* ¶ 38). Thus, it appears that at some point Dr. Sowa determined that Plaintiff could return to work.

1

On July[2] 1, 2016, allegedly relying upon the evaluation of Dr. Sowa, NCC issued a letter to Plaintiff demanding she return to work or face consequences. (*Id.* ¶¶ 38, 39). Plaintiff did not return to work but, on August 8, 2016, Plaintiff's personal physician provided her with a "disability note." (*Id*. ¶¶ 37-38, 44). On October 13, 2016, "NCC advised Plaintiff they attempted to place her into another position, and since she remained unable to perform any and all work, she would be separated since placement in another position could not be accomplished." (*Id.* ¶ 55). Thereafter, Plaintiff sought and received Family Medical Leave Act ("FMLA") leave for the birth of her child. (*Id.* ¶ 56).[3] After the expiry of Plaintiff's FMLA leave, she requested additional paid leave on January 13, 2017. (*Id.* ¶ 58). NCC rejected her request citing "undue hardship" and, on February 2, 2017, notified Plaintiff that she would be terminated. (*Id.* at 59).

On July 30, 2018, Plaintiff filed the present action, alleging that Defendant NCCPD committed wrongful discrimination against Plaintiff in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Delaware Persons with Disabilities Employment Protections Act ("DEPA") (Count I), Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), and the Delaware Discrimination in Employment Act ("DDEA") (Count III). Plaintiff also alleged retaliation by NCCPD in violation of the ADA. (Count II). In addition to discrimination and retaliation, Plaintiff included state law claims for breach of the implied covenant of good faith and fair dealing (Count IV) in her employment contract with NCCPD and breach of the Collective Bargaining Agreement between New Castle

---

[2] Plaintiff's First Amended Complaint states the date as June 1, 2016, but this is later identified as an error in Plaintiff's briefing. (*See* D.I. 32 at 4 n.2).

[3] Plaintiff's First Amended Complaint does not state when Plaintiff gave birth, but based upon the parties' briefing, her child appears to have been born on November 1, 2016. (*See* D.I. 33 at 5).

County and the Fraternal Order of Police, Lodge No. 5, which purportedly applied to Plaintiff as a third-party beneficiary (Count V). Finally, Plaintiff alleged that NCCPD deprived her of substantive due process rights guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983. (Count VI).

On September 24, 2018, Defendants filed a motion to dismiss under Rule 12(b)(6), arguing that the Complaint failed to plausibly allege discrimination in violation of the ADA, DEPA, PDA or DDEA and retaliation under the ADA. (*See* D.I. 11 & 12). This Court granted that motion and dismissed Plaintiff's complaint with leave to amend, instructing Plaintiff to make clear in any Amended Complaint what purportedly wrongful conduct was undertaken by each of the named Defendants and to identify which Defendants (by name) are accused under each count of the Complaint. (*See* D.I. 19).

Plaintiff then filed her Amended Complaint (D.I. 20) on September 11, 2019, alleging most of the same claims,[4] removing NCCPD as a party, and refining some of Plaintiff's allegations. Plaintiff also added an additional Title VII discrimination claim (Count VII) and an additional 14th Amendment claim against Defendants NCC, Meyer and Bond (Count VIII). On October 28, 2019, Defendants filed the instant motion to dismiss all counts for failure to state a claim under Rule 12(b)(6).

## II.   LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203,

---

[4]   Plaintiff dropped Count IV alleging breach of the covenant of good faith and fair dealing.

210 (3d Cir. 2009).[5]  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210.  A claim is facially plausible "when the plaintiff pleads factual content

---

[5] Plaintiff has argued that the instant motion to dismiss should be converted to a motion for summary judgment because Defendants' motion "contains and relies upon matters outside the pleadings." (citing *Uni-Marts, LLC v. NRC Realty Advisors, LLC*, 426 B.R. 77, 82 (D. Del. 2010)) (D.I. 32 at 8-9).  This Court, however, "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1195 (3d Cir. 1993).  That court continued:

> The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.  When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

*Id.* at 1196-97 (citations omitted).  Here, the documents relied upon in connection with the motion to dismiss were unquestionably known to Plaintiff at the time this action was filed, and neither party has disputed the veracity of the documents.  Accordingly, this Court will treat the instant motion to dismiss as such and apply the standard applicable under Rule 12(b)(6).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Plaintiff's Discrimination Claims (Counts I, III and VII)

Plaintiff's discrimination claims sound in pretext. (*See generally* D.I. 20). Pretext-based employment discrimination cases brought under the ADA, PDA, and Title VII are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 802-03 (1973). *See, e.g.*, *Sampson v. Methacton School Dist.*, 88 F.Supp.3d 422, 434-35 (E.D. Pa. 2015) ("In assessing claims of discrimination on the basis of a disability, courts apply the burden-shifting analysis set forth in *McDonnell Douglas* . . ."); *Sullivan v. Hanover Foods Corp.*, No. 18-803 (MN), 2020 WL 211216, at *15 (D. Del. Jan. 14, 2020) (analyzing Title VII claim under *McDonnell Douglas*); *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F. 3d 358, 364 (3d Cir. 2008) (analyzing PDA claim under *McDonnell Douglas*).[6]

---

[6] Defendants argue that because the "language of the state law equivalents of ADA (DEPA) and PDA (DDEA) are similar, arguments concerning the federal acts are equally applicable to the state law equivalents." (D.I. 26 at 7 n.4). Plaintiff has not argued otherwise and neither party performs a separate state/federal analysis in their briefing. Thus, consistent with precedent and the parties' arguments, the Court treats the corresponding state and federal claims identically and analyzes them under the same approach. *See Sullivan*, 2020 WL 211216, at *3 (applying "the same administrative requirements to both" DDEA and Title VII claims "and analyz[ing] them jointly"); *Sapienza v. Castellon*, No. 14–974–LPS,

5

Under *McDonnell Douglas*'s three-step burden-shifting framework, Plaintiff must first make out a *prima facie* case of discrimination. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193-94 (3d Cir. 2015). If she is successful, the burden of production shifts to Defendants to articulate a "legitimate, non-retaliatory reason for having taken the adverse action." *Id.* If Defendants successfully complete this second step, Plaintiff then has the opportunity to present evidence indicating that Defendants' reason(s) are mere pretext for a discriminatory motive. *Id.* Although the burden of production shifts back and forth, Plaintiff "has the ultimate burden of persuasion at all times." *Id.*

As discussed below, none of Plaintiff's ADA, PDA, and Title VII sex discrimination claims states a *prima facie* case of discrimination under the respective standards. Accordingly, this Court will dismiss each claim without undertaking the remainder of the *McDonnell Douglas* analysis.

        1.        <u>Plaintiff's ADA Discrimination Claim (Count I)</u>

To plead an ADA claim, Plaintiff must plead a *prima facie* case of discrimination under the ADA – namely that she: (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability. *McNelis v. Pennsylvania Power & Light Company*, 867 F.3d 411, 414 (3d Cir. 2017). The parties here dispute the second prong: whether Plaintiff is a "qualified individual."

Plaintiff bears the burden of proving that she was a "qualified individual" as contemplated by the statute. *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996). The Third Circuit uses a two-

---

2016 WL 1212132, at *5 (D. Del. Mar. 28, 2016) (predicting "the Delaware Supreme Court would treat federal courts' interpretations of Title I of the ADA as persuasive authority regarding the meaning of the DEPA, which contains substantially similar language to the ADA").

part test to determine whether someone is a "qualified individual with a disability" under the ADA. *McNelis*, 867 F.3d at 415 (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

> First, the individual must satisfy "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Second, the individual must be able to "perform the essential functions of the position held or desired, with or without reasonable accommodation."

*McNelis*, 867 F.3d at 415 (citations omitted). The determination as to whether a claimant was a "qualified individual" is made by analyzing the Plaintiff's situation "at the time of the employment decision." *Gaul*, 134 F.3d at 580.

The parties do not dispute that Plaintiff possesses the background, experience, and training necessary to be police officer. (*See generally* D.I. 20 ¶¶ 2, 10, 22-23 (Plaintiff was, in fact, a police officer)). The parties do, however, dispute whether Plaintiff was "able to 'perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *McNelis*, 867 F.3d at 415; (*compare* D.I. 20 ¶ 88 *with* D.I. 26 § III.B).

Plaintiff claims that she "would have been able to perform the essential functions of her job" had she been given the reasonable accommodation of "additional leave." (D.I. 20 ¶¶ 60-61). In some instances, "it may be possible for a requested leave of absence to constitute a reasonable accommodation." *Fogelman v. Greater Hazelton Health Alliance*, 122 Fed. App'x 581, 585 (3d Cir. 2004). These instances only occur, however, when "such a reasonable accommodation at the present time would enable the employee to perform [her] essential job functions in the near future." *Id.* (quoting *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004)). Indeed, courts in the Third Circuit have repeatedly held that "a request for indefinite leave is inherently unreasonable, particularly where there is no favorable prognosis." *See Peter v. Lincoln Technical Institute, Inc.*, 255 F. Supp. 2d 417, 437 n.7 (E.D. Pa. 2002) (citing examples).

Plaintiff alleges in conclusory fashion that she "believed she would soon be able to return to work if she was granted the additional time off for treatment she requested." (D.I. 20 ¶ 58). Plaintiff, however, had not been cleared for work and she does not allege in her Amended Complaint that the requested leave was temporary. Nor does she allege a date certain for her return or that she provided such information to NCC. *See Tolliver v. Trinity Parish Foundation*, 723 Fed. App'x 166, 170-71 (3d Cir. 2018) (holding that where plaintiff was unable to perform job duties when initial leave expired and plaintiff never asked to return to work or identified a date by which she would be capable of returning to work, request for extended leave was not reasonable). As Plaintiff had already been on paid leave for fifteen months and does not allege that her additional requested leave was of set duration or with a predictable return date, her request must be construed as open-ended and indefinite. *See e.g. Fogelman*, 122 Fed. App'x at 586 (where plaintiff failed to specify the duration of the expected leave, court was forced to conclude that request was open-ended). Such open-ended leave is not a "reasonable accommodation." Accordingly, Plaintiff was not a "qualified individual" at the time of her termination, and Plaintiff's claim for discrimination under the ADA will be dismissed.

### 2. Plaintiff Claim Under the PDA (Count III)

To state a Title VII pregnancy discrimination claim under the PDA, the Plaintiff must show that: (a) she was a member of a protected class; (b) she was qualified for the job she sought or held; and (c) another, not in the protected class, was treated more favorably. *See Doe*, 527 F. 3d at 365. Assuming, *arguendo*, that Plaintiff was a member of a protected class (*i.e.* pregnant)[7] and

---

[7] The parties dispute whether the Plaintiff has adequately demonstrated that she was pregnant "at or near the time of her termination." *Anderson v. Boeing Co.*, 694 Fed. App'x 84, 87 (3d Cir. 2017). It appears from the briefing that Plaintiff gave birth on November 1, 2016. (*See* D.I. 26 at 12). Plaintiff was notified of her termination on

8

that non-pregnant employees were treated more favorably,[8] Plaintiff has failed to establish that she was qualified for the job she sought or held. In fact, if anything, Plaintiff has pleaded the opposite.

Plaintiff must clear the "*prima facie* hurdle" of establishing qualification by showing that "she was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992) (internal alteration omitted) (italics added). Plaintiff here, however, has pleaded that she was unable to work and provided no timetable indicating the likely date of her eventual return. (D.I. 20 ¶¶ 60-61). Instead, in connection with Count III, Plaintiff contends that she was "totally disabled" by her injury. (D.I. 20 ¶ 109). Notably, the Plaintiff's use of the conjunctive ("totally disabled **and** had a high-risk pregnancy") indicates that her high-risk pregnancy was not the cause of her disability at that time – put differently, even absent her pregnancy, Plaintiff claims to have been totally disabled. (D.I. 20 ¶ 109) (emphasis added). For the purposes of her PDA claim, Plaintiff cannot both be "totally disabled" and also be "among those persons from whom a selection . . . would be made" to fill the position (that requires she not be disabled). Accordingly, Plaintiff was not qualified for the job she sought or held, and her pregnancy discrimination claim under the PDA will be dismissed.

---

February 2, 2017. (D.I. 20 ¶ 59). For purposes of this motion only, this Court assumes *arguendo* that Plaintiff was covered by the statute at the time in question.

[8] The main thrust of Plaintiff's contention that others were treated more favorably appears to be that non-pregnant individuals were given longer leaves and not terminated. To the extent, however, that she asserts that there was more favorable treatment in connection with payment of medical bills (*see* D.I. 20 ¶ 106), she avers no facts (*e.g.*, dates, bills paid/not paid) to support such a claim.

### 3. Plaintiff's Title VII Sex Discrimination Claim (Count VII)

To plead a claim under Title VII for sex discrimination requires Plaintiff to show that: a) she was a member of a protected class; (b) she was qualified for the job she sought or held; and (c) another, not in the protected class, was treated more favorably. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (outlining *prima facie* case). Here, as with the other claims, Defendants assert that Plaintiff has not adequately pleaded a claim under Title VII.[9] For this claim, however, Defendants also argue that Plaintiff failed to exhaust her administrative remedies. The Court agrees.

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). "As a precondition to the commencement of a Title VII action in [district] court, a complainant must first file a charge" with the EEOC. *Ford Bend Cty., Texas v. Davis*, 139 S.Ct. 1843, 1846 (2019). In determining whether Plaintiff has exhausted her administrative remedies, this Court must determine whether the claims alleged in the instant suit are "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.2d 1291, 1295 (3d Cir. 1996).

Here, Plaintiff's EEOC complaint includes a section entitled "Brief statement of allegations," wherein Plaintiff averred that she was harassed due to "her disability, pregnancy, and relationship with her husband." (*See id.*). The EEOC complaint also allowed Plaintiff to name "comparators" for her discrimination allegation; Plaintiff named four women amongst the comparators. (*See id.*). Finally, when identifying the protected classes upon which Plaintiff based

---

[9] They dispute whether Plaintiff was qualified for the job she held and whether others were treated more favorably.

10

her complaint, the form lists Disability, Marital Status, Retaliation, and "Sex – Pregnancy," with the latter combined as a single item. (*See id.*). This document was signed by Plaintiff as being true and correct, a signature which was duly notarized. (*See id.*).

A claim of discrimination based on Plaintiff's sex (*i.e.* receiving disparate treatment from men) is not "fairly within the scope" of this EEOC complaint. Plaintiff argues that "Clemons' gender discrimination claims assert facts similar or that arise out of her disability and pregnancy discrimination claims." (D.I. 32 at 10). This argument, however, is undermined by Plaintiff's own briefing, in which she admits that binding precedent states that "[e]stablishing a *prima facie* case of pregnancy discrimination differs from establishing a *prima facie* case of gender discrimination." (D.I. 32 at 11) (quoting *Doe*, 527 F.3d at 365).[10]

Finally, Plaintiff's argument that "she checked off ***sex*** as a protected class" on the EEOC complaint is not dispositive. (D.I. 32 at 9; *see* D.I. 26-7) (emphasis in original). This Court agrees with Defendants' reading of *Barzanty v. Verizon PA, Inc.*, in which the Third Circuit determined that the eligible scope of a district court action is properly "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," and not by which boxes Plaintiff checked. 361 Fed. App'x 411, 414 (3d Cir. 2010). The EEOC investigation is properly focused on "the gravamen of [Plaintiff]'s complaint," which in this case did not include discrimination on the basis of Plaintiff's sex. *See Antol*, 82 F.3d at 1296. Thus, Plaintiff's "statement of allegations" did not put the EEOC or NCC on notice of her (non-pregnancy) sex discrimination claim. Accordingly, Plaintiff failed to exhaust her administrative

---

[10] Plaintiff also claims that "[a] pregnancy discrimination case is unique and is not treated as an ordinary case of gender discrimination." (D.I. 32 at 15).

remedies with regard to her Title VII sex discrimination claim, and that claim will be dismissed with prejudice.

### B. Plaintiff's ADA Retaliation Claim

The *McDonnell Douglas* three-step burden-shifting framework also governs this Court's analysis of Plaintiff's retaliatory discrimination claim.[11] *Daniels*, 776 F.3d at 193-94; *see Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (applying *McDonnell Douglas* framework to ADA retaliation claim). "To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse*, 126 F.3d at 500.

Plaintiff alleges that she engaged in protected activity when "she went out on medical leave due to a work-related injury," and appears to allege that the denial of her January 13, 2017 request for additional leave and subsequent termination are the retaliatory activities. (D.I. 20 ¶¶ 98-101). Plaintiff's claim is flawed because – as discussed *supra* in Part III.A.1 – indefinite open-ended paid leave is not a reasonable accommodation. Accordingly, seeking such leave cannot be said to be a "protected employee activity" for the purposes of the statute.[12] Finding that Plaintiff has failed to plead a *prima facie* case of ADA retaliation, her retaliation claim will be dismissed.

---

[11] Plaintiff may still pursue an ADA retaliation claim despite this Court's determination that Plaintiff was not a "qualified individual with a disability." *See Krouse*, 126 F.3d at 502 ("Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that [s]he is a 'qualified individual with a disability.'").

[12] Plaintiff sought – and received – FMLA leave for the birth of her child in addition to the more than twelve months of paid leave for her injury.

## C. Plaintiff's Fourteenth Amendment *Monell* Claim (Count VI)

"A municipality may not be liable under § 1983 under the theory of *respondeat superior*." *Santora v. Red Clay Consol. Sch. Dist.*, 580 Fed. App'x 59, 62 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691–92 (1978)). Thus, to succeed on her due process claim, Plaintiff must "ultimately show that [NCC] maintained a policy or custom that caused a violation of her constitutional rights." *Santora*, 580 Fed. App'x at 62. To state a *Monell* custom-and-policy claim, Plaintiff must: "(1) identify a policy or custom that deprived her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and Plaintiff's injury." *Shipley v. New Castle Cty.*, 597 F. Supp. 2d 443, 448 (D. Del. 2009) (citing *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Santora*, 580 Fed. App'x at 62. "A single decision suffices as a policy only when the causal link between the policymaker's conduct and the constitutional harm is clear, such as when the policymaker himself specifically authorizes or directs the deprivation." *Id.*

Plaintiff alleges that NCC "has a custom and policy which permits it to begin termination proceedings against female officers earlier than NCC begins termination proceedings against male officers." (D.I. 20 ¶ 137). Plaintiff further alleges that Defendant Watson, a Lieutenant Colonel, was the "policymaker" for NCC and that he "implemented this policy and custom." (*Id.* ¶¶ 138-39). The Third Circuit has defined a "policymaker" as a person with final, unreviewable authority to make a decision or take action." *Santora*, 580 Fed. App'x at 62. Although Plaintiff claims that "[u]pon information and belief Defendant Watson was acting as a policymaker for NCC," this

13

allegation is conclusory and not supported by necessary facts. (D.I. 20 ¶ 138). Moreover, Plaintiff's assertion that Defendant Watson was a policymaker is undercut by her separate claim that Defendants Meyer and Bond failed to supervise Defendant Watson – a responsibility to supervise Defendant Watson indicates that Defendant Watson's decisions or actions were not unreviewable. (*See* D.I. 20 ¶¶ 178-190). Thus, assuming the facts pleaded in the Amended Complaint to be true, Watson was not a policymaker and Plaintiff's *Monell* claim fails.

### D. Plaintiff's Fourteenth Amendment Failure to Supervise/Inadequacy of Training Claims (Count VIII)

Plaintiffs asserts claims for failure to supervise or train or the alleged inadequacy of supervision or training against NCC, Meyer and Bond.[13] To assert such claims, Plaintiff must allege that: "(1) municipal policymakers know that employees will confront a particular situation[;] (2) the situation involves a difficult choice or a history of employees mishandling[;] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "A plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest*, 930 F.3d at 106.

Plaintiff alleges that NCC and Defendants Meyer and Bond, as policymakers, failed to train or supervise Defendant Watson, leading to a "pattern of practice of discriminatory conduct."

---

[13] Although Plaintiff's failure to supervise claims are dismissed against all Defendants on other grounds, the Court notes that Plaintiff names each of the Individual Defendants both as individuals and in their official capacities. (*See* D.I. 20 ¶¶ 13-16, 180-190). Defendants argue—without response from Plaintiff—that, as a matter of law, any alleged liability for the Individual Defendants' actions lie with the County, not with the individuals. (D.I. 26 at 18 n.7). Additionally, Defendants argue that Plaintiff's official capacity claims are properly raised against the county itself. *Id.* Should Plaintiff pursue her Fourteenth Amendment claims against the Individual Defendants further, Plaintiff should be prepared to respond to the aforementioned arguments.

14

(D.I. 20 ¶¶ 180-188). This alleged pattern was apparently manifested as "female officers being treated differently and less favorable than the male officers, specifically related to continued disability leave" by Defendant Watson. (*Id.* ¶ 184). These conclusory allegations, however, are not sufficient to sustain a claim in the absence of well-pleaded supporting facts.

First, Plaintiff has not alleged that Defendants Meyer and Bond[14] are "municipal policymakers" for the purposes of the statute. *See Forrest*, 930 F.3d at 106. To the contrary, as discussed *supra*, Plaintiff alleged that Defendant Watson was a "policymaker." Accordingly, Plaintiff has not pleaded the necessary facts for liability arising from any alleged action to be imputed to NCC. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable").

Second, Plaintiff has not pleaded the necessary facts to establish "a history of employees mishandling" a situation in a manner that has "frequently cause[d] deprivation of constitutional rights." *See Forrest*, 930 F.3d at 106. In conclusory fashion, Plaintiff claims that a "discriminatory pattern of practice was being carried out by Watson and Phillips" in the form of "female officers being treated differently and less favorable [sic] than the male officers." (D.I. 20 ¶¶ 184, 187). Even assuming, *arguendo*, that Plaintiff's requests for disability leave or termination were managed less favorably than those of officers not belonging to Plaintiff's protected classes, Plaintiff has not pleaded facts indicating a "history of employees mishandling" these situations. Plaintiff does not identify a single additional case, much less a pattern, of a discriminatory

---

[14] Plaintiff does not consistently state who among the Individual Defendants allegedly supervised whom, further obscuring which of them are alleged to be policymakers. (*Compare* (D.I. 20 ¶ 180) (Meyer and Bond supervising Phillips and Watson) *with* (*id.* ¶ 181) (Meyer supervising Bond, Phillips, and Watson)).

employment action levied against another employee on the basis of sex or pregnancy. Plaintiff has not pleaded a *prima facie* case for a Fourteenth Amendment failure to supervise or inadequacy of training claim, and Count VIII will be dismissed.

### E. Claims Improperly Raised Against Individuals Are Dismissed with Prejudice

Plaintiff asserts ADA and Title VII claims against Individual Defendants. The Third Circuit, however, has rejected individual liability for ADA and Title VII claims. (D.I. 26 at 6); *see, e.g.*, *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII.") (citation omitted); *Koslow v. Commw. of Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (finding "no individual liability for damages under Title I of the ADA"). Indeed, Plaintiff does not dispute that Individual Defendants were improperly named in Plaintiff's ADA, PDA, Title VII sex discrimination, and ADA retaliation claims. (D.I. 32 at 9; *see generally* D.I. 20). Accordingly, Counts I, II, III, and VII are dismissed with prejudice as to the Individual Defendants.

### F. The Court Will Not Exercise Jurisdiction Over Plaintiff's Remaining State Law Contract Claim (Count V)

Count V asserts a state law claim for breach of contract: Plaintiff alleges that Defendants' actions *vis-à-vis* Plaintiff violated the Collective Bargaining Agreement between NCC and the Fraternal Order of Police, Lodge No. 5. (*See* D.I. 20 at 17). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Here, the Amended Complaint fails to state a claim with respect to the federal claims in Counts I, II, III, VI, VII, and VIII, and no other

considerations of judicial economy, convenience, or fairness have been raised.[15] This Court will therefore decline to exercise supplemental jurisdiction over Plaintiff's state law contract claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction"); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413 (D. Del. 1993) (declining jurisdiction over state tort law claims after ruling against the plaintiff-arrestee's remaining § 1983 claim).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 25) is GRANTED. An appropriate order will follow.

---

[15] The Court notes that the Collective Bargaining Agreement includes a dispute resolution policy that requires the parties to submit to binding arbitration. (*See* D.I. 26-6 ¶(17)(c)).