IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MELISSA CLEMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1120 (MN) |
| | ) | |
| NEW CASTLE COUNTY, MATTHEW | ) | |
| MEYER, New Castle County Executive, | ) | |
| VAUGHN M. BOND, JR., Chief of New | ) | |
| Castle County Police, VANESSA S. | ) | |
| PHILLIPS, Chief Human Resources Officer, | ) | |
| and Former Lieutenant Colonel QUINTON | ) | |
| WATSON, in their individual capacities. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Michele D. Allen, ALLEN & ASSOCIATES, Wilmington, DE – attorneys for Plaintiff

Mary A. Jacobson, Laura Thomas Hey, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, DE – attorneys for Defendants

April 12, 2021
Wilmington, Delaware

*Maryellen Noreika*

NOREIKA, U.S. DISTRICT JUDGE:

Presently before the Court is the motion of Defendants Matthew Meyer, Vaughn M. Bond, Jr., Vanessa S. Phillips, and former Lieutenant Colonel Quinton Watson ("the Individual Defendants") and New Castle County ("NCC") (collectively with the Individual Defendants "Defendants") to dismiss Plaintiff Melissa Clemons' ("Plaintiff") Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* D.I. 42). For the reasons set forth below, the Court will GRANT Defendants' motion.

## I.    **BACKGROUND**

This Court set forth the facts giving rise to this case in its prior opinion *Clemons v. New Castle Cnty.*, Civ. A. No. 1:18-cv-1120-MN, 2020 WL 5978343, at *1-2 (D. Del. Oct. 8, 2020) ("*Clemons I*"):

> Plaintiff was employed with the New Castle County Police Department ("NCCPD") from July 6, 2004 until February 2, 2017. (D.I. 20 ¶¶ 22, 59). On September 23, 2015, while working as a Police Officer with NCCPD, Plaintiff injured her left hand during a training exercise. (*Id.* ¶ 23). NCC required Plaintiff to see Dr. Sowa after her injury. (*Id.* ¶ 24). Plaintiff underwent an initial evaluation with Dr. Sowa on September 24, 2015, after which he determined that Plaintiff was unable to work because of "her pain levels and immobility." (*Id.* ¶ 27). Plaintiff continued to see Dr. Sowa for her injury until June 5, 2016, at which point he stated that her condition "was out of his realm of expertise, [and] there was nothing more he could do for her so he referred her to Johns Hopkins." (*Id.* ¶ 30). He gave her a restriction against use of her left hand, and "stated other restrictions had to come from other physicians or specialists." (*Id.* ¶ 31).[1] Plaintiff saw her primary care physician and a doctor at Johns Hopkins who both opined that Plaintiff should not return to work. (*Id.* ¶¶ 34-38). Prior to Dr. Sowa's statements on June 5, 2016, Plaintiff had informed her supervisor at NCCPD that she was pregnant. (*Id.* ¶ 28).
>
> On July[2] 1, 2016, allegedly relying upon the evaluation of Dr. Sowa, NCC issued a letter to Plaintiff demanding she return to work or face consequences. (*Id.*

---

[1]    Plaintiff alleges that Dr. Sowa did not release her to work (*id.*), but also asserts that "NCC relied solely on Dr. Sowa's opinion in deciding she was able to return to work." (*Id.* ¶ 38). Thus, it appears that at some point Dr. Sowa determined that Plaintiff could return to work.

[2]    Plaintiff's First Amended Complaint erroneously stated that the letter was dated June 1, 2016. (*See* D.I. 32 at 4 n.2).

Case 1:18-cv-01120-MN   Document 48   Filed 04/12/21   Page 3 of 18 PageID #: 571

¶¶ 38, 39).   Plaintiff did not return to work but, on August 8, 2016, Plaintiff's personal physician provided her with a "disability note."  (*Id.* ¶¶ 37-38, 44).   On October 13, 2016, "NCC advised Plaintiff they attempted to place her into another position, and since she remained unable to perform any and all work, she would be separated since placement in another position could not be accomplished."  (*Id.* ¶ 55).   Thereafter, Plaintiff sought and received Family Medical Leave Act ("FMLA") leave for the birth of her child. (*Id.* ¶ 56).[3]  After the expiry of Plaintiff's FMLA leave, she requested additional paid leave on January 13, 2017.  (*Id.* ¶ 58).   NCC rejected her request citing "undue hardship" and, on February 2, 2017, notified Plaintiff that she would be terminated.  (*Id.* at 59).

On July 30, 2018, Plaintiff filed the present action, alleging that Defendant NCCPD committed wrongful discrimination against Plaintiff in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Delaware Persons with Disabilities Employment Protections Act ("DEPA") (Count I), Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), and the Delaware Discrimination in Employment Act ("DDEA") (Count III).   Plaintiff also alleged retaliation by NCCPD in violation of the ADA (Count II).   In addition to discrimination and retaliation, Plaintiff included state law claims for breach of the implied covenant of good faith and fair dealing (Count IV) in her employment contract with NCCPD and breach of the Collective Bargaining Agreement between New Castle County and the Fraternal Order of Police, Lodge No. 5, which purportedly applied to Plaintiff as a third-party beneficiary (Count V).   Finally, Plaintiff alleged that NCCPD deprived her of substantive due process rights guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983 (Count VI).

On September 24, 2018, Defendants moved to dismiss under Rule 12(b)(6), arguing that the Complaint failed to plausibly allege discrimination in violation of the ADA, DEPA, PDA or

---

[3]   Plaintiff's First Amended Complaint does not state when Plaintiff gave birth, but based upon the parties' briefing, her child appears to have been born on November 1, 2016. (*See* D.I. 33 at 5).

DDEA and retaliation under the ADA.  (*See* D.I. 11 & 12).  This Court granted that motion and dismissed Plaintiff's complaint with leave to amend, instructing Plaintiff to make clear in any Amended Complaint what purportedly wrongful conduct was undertaken by each of the named Defendants and to identify which Defendants (by name) are accused under each count of the Complaint.  (*See* D.I. 19).

Plaintiff then filed her Amended Complaint (D.I. 20) ("the Amended Complaint") on September 11, 2019, alleging most of the same claims,[4] removing NCCPD as a party, and refining some of Plaintiff's allegations.  Plaintiff also added a Title VII discrimination claim (Count VII) and a 14th Amendment claim against Defendants NCC, Meyer, and Bond (Count VIII).  On October 28, 2019, Defendants moved to dismiss all counts for failure to state a claim under Rule 12(b)(6).  (*See* D.I. 25).

On October 8, 2020, this Court issued an opinion (*Clemons I*) and order granting Defendants' motion to dismiss Plaintiff's Amended Complaint.[5]  (*See* D.I. 35; 36).  In *Clemons I,* this Court: dismissed counts III and VII with prejudice; dismissed counts I, II, III, and VII with prejudice as to the Individual Defendants; and dismissed Counts I, II, VI, and VIII without prejudice.  (*See* D.I. 36).[6]

---

[4]     Plaintiff dropped Count IV alleging breach of the covenant of good faith and fair dealing. The Court declined to exercise supplemental jurisdiction over Plaintiff's state law contract claims in Count V.

[5]     Between the filing of Defendants' October 28, 2019 motion to dismiss and this Court's order, the Court granted a series of stays and extensions due to various issues, including but not limited to the COVID-19 pandemic.

[6]     Plaintiff appealed the dismissal of Counts III and VII (D.I. 38), but subsequently withdrew the appeal (D.I. 41).

Plaintiff then filed the SAC on October 29, 2020.  (*See* D.I. 37).  The SAC contains four counts: Count I, alleging ADA and DEPA discrimination against Defendant NCC; Count II, alleging ADA retaliation against Defendant NCC; Count III, alleging a *Monell* custom and policy claim against Defendants NCC, Watson, and Phillips; and Count IV, alleging Fourteenth Amendment violations against Defendants NCC, Meyer, and Bond.  (*Id.* at 11-17).  Counts III and IV now name the Individual Defendants in their individual capacities only.  (*Id.* ¶¶ 9-12).  Plaintiff's SAC adds a single substantive factual allegation to those set forth in the Amended Complaint: Plaintiff avers that Plaintiff's January 13, 2017 request for additional leave was "for a definite period of time until March 13, 2017."  (*Id.* ¶ 54).  On November 19, 2020, Defendants filed the instant motion to dismiss all counts in Plaintiff's SAC for failure to state a claim under Rule 12(b)(6).  (D.I. 42; D.I. 43).  The motion is fully briefed.

## II.    LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Id.* at 210-11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Dismissal under Rule 12(b)(6) is appropriate if a

complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210.   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).   Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III.   DISCUSSION[7]

### A.   Plaintiff's Discrimination Claim (Count I)

Plaintiff's discrimination claim sounds in pretext.  (*See generally* D.I. 37).  Pretext-based employment discrimination cases brought under the ADA and DEPA are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 802-03 (1973). *See, e.g.*, *Sampson v. Methacton School Dist.*, 88 F.Supp.3d 422, 434-35 (E.D. Pa. 2015) ("In assessing claims of discrimination on the basis of a disability, courts apply the burden-shifting analysis set forth in *McDonnell Douglas* . . ."); *Sullivan v. Hanover Foods Corp.*, No. 18-803 (MN), 2020 WL 211216, at \*15 (D. Del. Jan. 14, 2020) (analyzing Title VII claim under

---

[7]      Much of the language and law appearing *infra* is taken from *Clemons I*.  For the sake of expediency and tidy citations, however, language appearing verbatim in *Clemons I* is often set forth herein without citation to this Court's previous opinion.

*McDonnell Douglas*); *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F. 3d 358, 364 (3d Cir. 2008) (analyzing PDA claim under *McDonnell Douglas*).[8]

Under *McDonnell Douglas*'s three-step burden-shifting framework, Plaintiff must first make out a *prima facie* case of discrimination. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193-94 (3d Cir. 2015).  If she is successful, the burden of production shifts to Defendants to articulate a "legitimate, non-retaliatory reason for having taken the adverse action." *Id.*  If Defendants successfully complete this second step, Plaintiff then has the opportunity to present evidence indicating that Defendants' reason(s) are mere pretext for a discriminatory motive. *Id.* Although the burden of production shifts back and forth, Plaintiff "has the ultimate burden of persuasion at all times." *Id.*

Plaintiff's ADA claim fails to state a *prima facie* case of discrimination under the relevant standard.  Accordingly, this Court will dismiss Plaintiff's ADA claim without undertaking the remainder of the *McDonnell Douglas* analysis.

To make a *prima facie* showing of ADA discrimination, Plaintiff must plead that she: (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability.  *McNelis v. Pennsylvania Power & Light Company*, 867 F.3d 411, 414 (3d Cir. 2017).  The parties here dispute the second prong: whether Plaintiff is a "qualified individual."

---

[8]     As this Court previously noted in *Clemons I*, consistent with precedent and absent suggestion from the parties to proceed otherwise, the Court treats the corresponding state and federal claims identically and analyzes them under the same approach. *See Sullivan*, 2020 WL 211216, at *3 (applying "the same administrative requirements to both" DDEA and Title VII claims "and analyz[ing] them jointly"); *Sapienza v. Castellon*, No. 14–974–LPS, 2016 WL 1212132, at *5 (D. Del. Mar. 28, 2016) (predicting "the Delaware Supreme Court would treat federal courts' interpretations of Title I of the ADA as persuasive authority regarding the meaning of the DEPA, which contains substantially similar language to the ADA").

Plaintiff bears the burden of proving that she was a "qualified individual" as contemplated by the statute. *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996). The Third Circuit uses a two-part test to determine whether someone is a "qualified individual with a disability" under the ADA. *McNelis*, 867 F.3d at 415 (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

> First, the individual must satisfy "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Second, the individual must be able to "perform the essential functions of the position held or desired, with or without reasonable accommodation."

*McNelis*, 867 F.3d at 415 (citations omitted). The determination as to whether a claimant was a "qualified individual" is made by analyzing the Plaintiff's situation "at the time of the employment decision." *Gaul*, 134 F.3d at 580.

The parties do not dispute that Plaintiff possesses the background, experience, and training necessary to be police officer. (*See generally* D.I. 37 ¶¶ 2, 7, 18 (Plaintiff was, in fact, a police officer)). The parties instead dispute whether Plaintiff was "able to 'perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *McNelis*, 867 F.3d at 415; (*compare* D.I. 37 ¶ 84 *with* D.I. 43 at 6–10).

Plaintiff claims that she believed she "would have been able to perform the essential functions of her job" had she been given the reasonable accommodation of "additional leave." (D.I. 37 ¶¶ 54-57). As set forth in this Court's previous opinion, in some instances, "it may be possible for a requested leave of absence to constitute a reasonable accommodation." *Fogelman v. Greater Hazelton Health Alliance*, 122 Fed. App'x 581, 585 (3d Cir. 2004); *see Clemons I*, 2020 WL 5978343, at *4. These instances only occur, however, when "such a reasonable accommodation at the present time would enable the employee to perform [her] essential job functions in the near future." *Fogelman*, 122 Fed. App'x 585. (quoting *Conoshenti v. Pub. Serv.*

*Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004)).  Indeed, courts in the Third Circuit have repeatedly held that "a request for indefinite leave is inherently unreasonable, particularly where there is no favorable prognosis."  *See Peter v. Lincoln Technical Institute, Inc.*, 255 F. Supp. 2d 417, 437 n.7 (E.D. Pa. 2002) (citing examples).

This Court previously held, taking as true the facts set forth in the Amended Complaint, that Plaintiff was not a qualified individual for the purposes of the statute.  *Clemons I*, 2020 WL 5978343, at *4.  In the Amended Complaint, Plaintiff alleged in conclusory fashion that she "believed she would soon be able to return to work if she was granted the additional time off for treatment she requested."  (D.I. 20 ¶ 58).  This Court determined that Plaintiff did not plead that she been cleared for work and she did not allege that the requested leave was temporary, as she did not allege a date certain for her return or allege that she provided such information to NCC.  *See Clemons I*, 2020 WL 5978343, at *4; *see also Tolliver v. Trinity Parish Foundation*, 723 Fed. App'x 166, 170-71 (3d Cir. 2018) (holding that where plaintiff was unable to perform job duties when initial leave expired and plaintiff never asked to return to work or identified a date by which she would be capable of returning to work, request for extended leave was not reasonable).  As Plaintiff had already been on paid leave for fifteen months and did not allege that her additional requested leave was of set duration or with a predictable return date, this Court determined that her request for leave must be construed as open-ended and indefinite.  *See e.g. Fogelman*, 122 Fed. App'x at 586 (where plaintiff failed to specify the duration of the expected leave, court was forced to conclude that request was open-ended); *see also Clemons I*, 2020 WL 5978343, at *4.

Plaintiff now argues that her requested leave was reasonable because in the SAC she alleges that the January 13, 2017 request for leave was "for a definite period of time until

March 13, 2017." (D.I. 37 ¶ 54).  This single averment,[9] however, is insufficient to change the prior result.   As set forth in *Tolliver*, a requested leave of absence is not a reasonable accommodation where a likely or even potential return-to-work date is never provided to the employer.   723 Fed. App'x at 170-71 (finding request for leave was not a reasonable accommodation when Plaintiff was never able to "identify a date by which she would be capable of performing all essential functions of her job").  Here, although Plaintiff pleaded (as she did in her Amended Complaint) that she "believed she would soon be able to return to work if she was granted the additional time off" (D.I. 37 ¶ 54) and that she "would have been able to perform the essential functions of her job had she been given additional leave" (*Id.* ¶¶ 56-57), it is Plaintiff's continued failure to plead more than conclusory allegations[10] that dooms her claims.

First, Plaintiff has again only pleaded that she "believed" that she would be able to return to work if she was granted additional leave. (D.I. 37 ¶ 54).  Plaintiff not only fails to allege facts supporting that "belief," she does not allege that she actually would have been or was in fact able to return to work on March 13, 2017.[11]  Nor does Plaintiff allege that she communicated to her employer, either in her January 13, 2017 leave request or otherwise, that she would be able to return to work on March 13, 2017 or that, if granted additional leave, she would be able to perform

---

[9]   As noted *supra*, this sentence appears to be the only substantive addition Plaintiff's SAC contains when compared to the Amended Complaint.

[10]   When dismissing Plaintiff's Amended Complaint, this Court noted Plaintiff's failure to plead that there existed a date certain when she would be able to return to work as well as her failure to plead or even imply that she communicated any such return date to Defendant NCC – before or after she requested additional leave.  *See Clemons I*, 2020 WL 5978343, at *4.

[11]   Plaintiff's Answering Brief argues that additional leave "*could* have enabled" Plaintiff's return to work not that it would have done so.  (*See* D.I. 46 at 8 (emphasis added)).

the duties of her job on some near-future date certain.  Nor has Plaintiff attached any documents indicating that she did so.

A request for additional leave after fifteen months,[12] with no indication of a likely or probable return date, was not a request for a "reasonable accommodation."  Accordingly, Plaintiff was not a "qualified individual" at the time of her termination, and Plaintiff's claim for discrimination under the ADA will be dismissed.  As this is Plaintiff's third bite at the apple, and this Court's previous opinion indicated the nature of the facts Plaintiff needed to plead to survive a motion to dismiss, this dismissal of Plaintiff's ADA discrimination claim will be with prejudice.

**B.    Plaintiff's ADA Retaliation Claim (Count II)**

The *McDonnell Douglas* three-step burden-shifting framework also governs this Court's analysis of Plaintiff's retaliatory discrimination claim.[13]  *Daniels*, 776 F.3d at 193-94; *see Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (applying *McDonnell Douglas* framework to ADA retaliation claim).  "To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Krouse*, 126 F.3d at 500.

Plaintiff alleges that she engaged in protected activity "when she requested her accommodations of leave as well as when she went out on medical leave due to a work-related

---

[12]    Plaintiff sought – and received – FMLA leave for the birth of her child in addition to the more than twelve months of paid leave she was granted for her injury.

[13]    Plaintiff may pursue an ADA retaliation claim despite this Court's determination that Plaintiff was not a "qualified individual with a disability."  *See Krouse*, 126 F.3d at 502 ("Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that [s]he is a 'qualified individual with a disability.'").

injury." (D.I. 37 ¶ 99).  She then alleges that discontinuation of her treatments (*id.* ¶ 100) and denial of her January 13, 2017 request for additional leave and subsequent termination are the retaliatory activities (*id.* ¶¶ 101-102).

Plaintiff treats her allegations as setting forth two instances of retaliation.  (D.I. 46 at 10). First, Plaintiff argues that in retaliation for the protected activity of taking leave when she was first injured, Defendants delayed in paying for her physical therapy.  (D.I. 37 ¶ 100; D.I. 46 at 10 ("Plaintiff argues the two-month delay to pay her physical therapy bills was retaliatory.").  Plaintiff fails to plead any specific factual allegations as to when the delays occurred nor does she identify any still-unpaid bills or cancelled services that support her claim.  Plaintiff alleges that she was forced to stop receiving medical treatment during the summer of 2016 but also alleges that she sought and received "any and all treatments that were available to her," including braces, appointments with two pain management specialists, and even – despite the fact that Plaintiff's injury was to her left hand – speech therapy.  (D.I. 37 ¶¶ 43-45).  Plaintiff also alleges that some delays in treatment were caused by breastfeeding her child.  (*Id.* ¶ 53).

Furthermore, to establish retaliation under the ADA, Plaintiff must prove that she had a reasonable belief, in good faith, that the complained-of conduct was unlawful.  *See* 42 U.S.C. § 12203(a); *Brown v. Vanguard Grp., Inc.*, 2017 WL 412802, at *16 (E.D. Pa. Jan. 30, 2017) (quoting *Wilkerson*, 522 F.3d at 322).  Plaintiff could have no reasonable belief that NCC subjecting her physical therapy bills to utilization review violated the ADA because doing so is expressly authorized under the Delaware Code. *See* 19 Del. C. § 2322F(j).[14]

---

[14]   Moreover, with regard to "unpaid" bills, undisputed documents produced in connection with the briefing of this and prior motions (*e.g.*, D.I. 43-3) indicate that any disputed physical therapy bills in question were eventually paid after being delayed due to legitimate utilization review.  In fact, it appears that Plaintiff was aware as early as August 9, 2016 that payment had been re-authorized for her physical therapy.  (*See* D.I. 43-3).

Second, Plaintiff claims that she was terminated and her request for further leave was denied in retaliation for the protected activity of requesting additional leave on January 13, 2017. (D.I. 37 ¶¶ 101-102).  Plaintiff's claim is flawed because – as discussed *supra* in Part III.A – paid leave without any indication of a return date is not a reasonable accommodation.  Accordingly, seeking such leave cannot be said to be a "protected employee activity" for the purposes of the statute.  Finding that Plaintiff has failed to plead a *prima facie* case of ADA retaliation, her retaliation claim will be dismissed with prejudice.[15]

### C.   Plaintiff's Fourteenth Amendment *Monell* Claim (Count III)

"A municipality may not be liable under § 1983 under the theory of *respondeat superior*." *Santora v. Red Clay Consol. Sch. Dist.*, 580 Fed. App'x 59, 62 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691–92 (1978)).  Thus, to succeed on her due process claim, Plaintiff must "ultimately show that [NCC] maintained a policy or custom that caused a violation of her constitutional rights." *Santora*, 580 Fed. App'x at 62.  To state a *Monell* custom-and-policy claim, Plaintiff must: "(1) identify a policy or custom that deprived her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and Plaintiff's injury." *Shipley v. New Castle Cty.*, 597 F. Supp. 2d 443, 448 (D. Del. 2009) (citing

---

Additionally, Plaintiff claims that she sought many of the treatments she did receive on her own but has failed to establish or allege that Defendants were under any obligation to pay for these treatments.  (*See* D.I. 37 ¶¶ 44-45).  Plaintiff has, therefore, failed to identify a single treatment Defendants were obligated to provide that was not eventually paid for by NCC.

[15]   To the extent, Plaintiff's SAC can be read to suggest that her request for leave when she was first injured was a protected activity for which she was terminated in retaliation, she has not alleged any "temporal proximity and causal connection" between her request for leave and her termination more than a year later.

*Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).   "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."   *Santora*, 580 Fed. App'x at 62.   "A single decision suffices as a policy only when the causal link between the policymaker's conduct and the constitutional harm is clear, such as when the policymaker himself specifically authorizes or directs the deprivation."   *Id.*

Plaintiff alleges that NCC "has a custom and policy which permits it to begin termination proceedings against female officers earlier than NCC begins termination proceedings against male officers."   (D.I. 37 ¶ 104).   Plaintiff alleges that Defendant Watson, a Lieutenant Colonel, was a "policymaker" for NCC and that he "implemented this policy and custom."   (*Id.* ¶¶ 105-06).   Plaintiff also claims that "Defendant Phillips was the Chief Human Resources Officer for NCC" and was therefore a "policymaker."   (*Id.* ¶¶ 107).

The Third Circuit has defined a "policymaker" as "a person with final, unreviewable authority to make a decision or take action."   *Santora*, 580 Fed. App'x at 62.   In *Clemons I*, this Court found that "[a]lthough Plaintiff claims that '[u]pon information and belief Defendant Watson was acting as a policymaker for NCC,' this allegation [wa]s conclusory and not supported by necessary facts."   2020 WL 5978343, at *7.   In light of the lack of substantive factual additions to Plaintiff's SAC, this Court's position is unchanged.   Furthermore, the simple addition of a job title to Defendant Phillips in the SAC does not bestow upon Defendant Phillips the status of policymaker without more.

Moreover, as explicitly stated and relied upon in *Clemons I*,[16] Plaintiff's unsupported assertions that Defendants Watson and Phillips were policymakers are undercut by her separate claim that Defendants Meyer and Bond failed to supervise Defendants Watson and Phillips – a responsibility to supervise Defendant Watson and Phillips indicates that Defendants Watson's and Phillips' decisions or actions were not unreviewable.  (*See* D.I. 37 ¶¶ 121-35).  Thus, assuming the facts pleaded in the SAC to be true, Defendants Watson and Phillips were not policymakers and Plaintiff's *Monell* claim fails.

Even if, *arguendo*, Defendants Watson and Phillips were policymakers, policy is made when such a person "issues an official proclamation, policy, or edict."  *Santora*, 580 Fed. App'x at 62.  Plaintiff has alleged no such issuance in the SAC.  Plaintiff has alleged the existence of a "hit list" created by Defendant Watson (*see* D.I. 37 ¶¶ 59, 108, 129).  In the context of Plaintiff's factual allegations, however, any such "hit list" appears to be informal, and, in any event, was a far cry from Defendant Watson "issu[ing] an official proclamation, policy, or edict" – particularly in light of the fact that Plaintiff failed to identify a single officer on said list (other than allegedly her) who was subjected to any adverse employment action.

For the above-discussed reasons, and because Plaintiff has had multiple previous opportunities to amend, this Court will dismiss Plaintiff's *Monell* claim with prejudice.

### D.    Plaintiff's Fourteenth Amendment Failure to Supervise/Inadequacy of Training Claims (Count IV)

Plaintiff asserts claims for failure to supervise or train or the alleged inadequacy of supervision or training against NCC, Meyer, and Bond.  To assert such claims, Plaintiff must allege

---

[16]    *See* 2020 WL 5978343, at *7 ("Moreover, Plaintiff's assertion that Defendant Watson was a policymaker is undercut by her separate claim that Defendants Meyer and Bond failed to supervise Defendant Watson – a responsibility to supervise Defendant Watson indicates that Defendant Watson's decisions or actions were not unreviewable.  (*See* D.I. 20 ¶¶ 178-190).").

that: "(1) municipal policymakers know that employees will confront a particular situation[;] (2) the situation involves a difficult choice or a history of employees mishandling[;] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).  "A plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest*, 930 F.3d at 106.

Plaintiff alleges that NCC and Defendants Meyer and Bond, as policymakers, failed to train or supervise Defendants Watson and Phillips, leading to a "pattern of practice of discriminatory conduct."  (D.I.37 ¶¶ 121-135).  This alleged pattern was apparently manifested as "female officers being treated differently and less favorable [sic] than the male officers, specifically related to continued disability leave" by Defendant Watson.  (*Id.* ¶ 127).  As with the First Amended Complaint in *Clemons I*, the conclusory allegations in Plaintiff's SAC are not sufficient to sustain a claim in the absence of well-pleaded supporting facts.  *See* 2020 WL 5978343, at *8.

This Court dismissed Plaintiff's Amended Complaint after finding Plaintiff failed to allege that Defendants Meyer and Bond[17] were "municipal policymakers" for the purposes of the statute.  *See Clemons I*, 2020 WL 5978343, at *8.  Plaintiff's SAC now simply concludes, without any support, that Meyer and Bond were acting as policymakers when they "implemented this policy and custom."  (D.I. 37 ¶ 123).  As in *Clemons I*, Plaintiff's unsupported legal conclusions are insufficient to establish that Meyer and Bond were policymakers.  *See* 2020 WL 5978343, at *8.

---

[17]     Despite this Court drawing attention to an identical inconsistency in *Clemons I*, Plaintiff does not consistently state who among the Individual Defendants allegedly supervised whom.  (*Compare* (D.I. 37 ¶ 126) (Meyer and Bond supervising Phillips and Watson) *with* (*id.* ¶ 125) (Meyer supervising Bond, Phillips, and Watson)).

Accordingly, Plaintiff still has not pleaded the necessary facts for liability arising from any alleged action to be imputed to NCC.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable").

Second, as in *Clemons I*, Plaintiff has not pleaded the necessary facts to establish "a history of employees mishandling" a situation in a manner that has "frequently cause[d] deprivation of constitutional rights."  *See* 2020 WL 5978343, at *8, *see also Forrest*, 930 F.3d at 106.  Instead, in conclusory fashion, Plaintiff simply states that a "discriminatory pattern of practice was being carried out by Watson and Phillips" in the form of "female officers being treated differently and less favorable [sic] than the male officers."  (D.I. 37 ¶¶ 127, 133).

Even assuming, *arguendo*, that Plaintiff's own requests for disability leave or termination were managed less favorably than those of officers not belonging to Plaintiff's protected classes, Plaintiff has not pleaded facts indicating a "history of employees mishandling" these situations. Plaintiff does not identify a single additional case, much less a pattern, of a discriminatory employment action levied against another employee on the basis of sex or pregnancy.  Instead, the SAC merely states in conclusory fashion that "multiple females' disability requests and claims were mishandled and handled in a discriminatory manner at all times." (*Id.* ¶ 128).  Even Plaintiff's claim that Defendant Watson created a "hit list" of officers that he targeted for termination is insufficient to show a pattern.  Other than herself, Plaintiff fails to identify any employee who was terminated or suffered a violation of his or her Fourteenth Amendment rights after inclusion on the "hit list."  (*See generally id.*).

As Plaintiff has, in her SAC, not pleaded a *prima facie* case for a Fourteenth Amendment failure to supervise or inadequacy of training claim, Count IV will be dismissed with prejudice.

16

**IV.**   <u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's motion to dismiss (D.I. 42) is GRANTED.  An appropriate order will follow.